STATE OF MINNESOTA

IN SUPREME COURT

A14-0203

Court of Appeals                                                                    Lillehaug, J.

State of Minnesota,

        Respondent,

vs.                                                                    Filed: July 8, 2015
                                                                    Office of Appellate Courts

Alton Dominique Finch,

        Appellant.

_____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Mark V. Griffin, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

1.     A denial of a request to disqualify a district court judge for cause pursuant to Minn. R. Crim. P. 26.03, subd. 14(3), need not be challenged by petition for a writ of prohibition in order to preserve the issue for appeal. Further, a party may move to disqualify a district court judge without waiving the party's right to have the chief judge of the district hear and determine the request to disqualify.

2.     The district court erred when it denied appellant's motion to refer the request to disqualify to the chief judge of the district for hearing and determination.

1

Because a "reasonable examiner" would have questioned the district court's impartiality, the error was not harmless.

Reversed and remanded.

O P I N I O N

LILLEHAUG, Justice

During a probation revocation proceeding, the probationer moved the district court judge for disqualification or to direct the chief judge of the district to determine whether the district court judge was disqualified, due to what the probationer alleged was a "reasonable question" about judicial impartiality. The court denied the motion in its entirety and revoked probation. The probationer appealed, arguing that Minn. R. Crim. P. 26.03, subd. 14(3), requires the chief judge of the district court to hear requests to disqualify. The court of appeals affirmed the district court's decision, holding that probationer's arguments failed both procedurally and on the merits.

We hold that the probationer's appeal is not procedurally flawed, that the district court erred when it declined to refer the request to disqualify to the chief judge of the district, and that the error was not harmless. Thus, we reverse the decision of the court of appeals, vacate the probation revocation order, and remand to the district court for further proceedings before a different judge.

I.

On December 24, 2012, Alton Finch shot at two victims as part of a drive-by shooting. He was charged with second-degree assault under Minn. Stat. § 609.222, subd. 1 (2014), in addition to two other charges that were later dropped. Shortly after the

2

proceedings commenced, the case was reassigned from the original judge. Finch made a motion to remove the new judge from the case, treated as both peremptorily and for cause. The judge denied the motion, as did the chief judge of the district. That denial is not before us.

Following a stipulated facts bench trial, Finch was convicted of second-degree assault. Finch was placed on supervised probation for three years, with a three-year prison sentence stayed. Finch was also sentenced to one year at the county workhouse.[1] Shortly thereafter, Finch left the workhouse for a furlough and did not return. The district court issued an arrest warrant, and Finch turned himself in.

Prior to the scheduled probation revocation hearing, Finch moved to disqualify the district court judge "based on a reasonable question of [judicial] impartiality." In the alternative, Finch requested an order "directing the Chief Judge of the District Court to make a determination as to whether this [judge] should hear" the case, or an order "staying the proceedings so as to allow an independent tribunal to determine whether this [judge] has violated the Code of Judicial Ethics by not recusing . . . ." The district court rejected Finch's motions "in their entirety as they lack merit," without issuing a written order. Rather than referring Finch's motion to the chief judge, the court immediately commenced the probation revocation hearing. Following the hearing, which began that day and resumed five days later, the court revoked Finch's probation and executed his sentence.

---

[1]     The conviction was affirmed. *State v. Finch*, No. A13-1903, 2014 WL 4671102 (Minn. App. Sept. 22, 2014), *rev. denied* (Minn. filed Nov. 25, 2014).

Finch appealed the revocation of his probation. He argued that the district court erred when it declined to refer the disqualification motion to the chief judge of the district. *State v. Finch*, A14-0203, 2014 WL 4494409 *1 (Minn. App. Sept. 15, 2014). The court of appeals affirmed.[2] *Id*. The court held that Finch should have sought a writ of prohibition, which it said is the "proper remedy for challenging the denial of a motion to remove a judge for cause." *Id*. at *2. Even with that "technical error," the court of appeals cited two additional reasons to reject Finch's appeal. First, the court of appeals held that Finch waived his right to a hearing before the chief judge when he presented his motion "to the district court judge he sought to remove." *Id*. Second, the court of appeals held that Finch's motion failed on its merits, as Finch did not identify any evidence that the judge was biased against him. *Id*. at *2-3.

We granted Finch's petition for review, and consider in turn each of the issues decided by the court of appeals.

II.

A.

The court of appeals first held that the only "proper remedy for challenging the denial of a motion to remove a judge for cause" is a writ of prohibition, which Finch did not seek. *Finch*, A14-0203, 2014 WL 4494409 at *2; (citing *State v. Laughlin*, 508 N.W.2d 545, 547 (Minn. App. 1993) ("Prohibition is the appropriate remedy to pursue

---

[2]    Finch also unsuccessfully challenged the revocation of his probation based on the *Austin* factors, *Finch*, A14-0203, 2014 WL 4494409 at *3-4, which is not an issue before us.

4

when a motion or notice to remove for cause has been denied.")). "A motion to remove a judge is procedural and therefore governed by the Rules of Criminal Procedure." *In re Jacobs*, 802 N.W.2d 748, 751 (Minn. 2011). The interpretation of those rules "is a question of law subject to de novo review." *Ford v. State*, 690 N.W.2d 706, 712 (Minn. 2005).

Pursuant to the Minnesota Rules of Criminal Procedure, parties have a peremptory right to remove a judge assigned to preside at a trial or hearing. *See* Minn. R. Crim. P. 26.03, subd. 14. Notice of removal must be given within seven days after the party receives notice of the name of the presiding judge, and the judge must not have already presided at the trial, omnibus hearing, or evidentiary hearing. Minn. R. Crim. P. 26.03, subd. 14(4). So long as these procedural requirements are met, the judge is removed.

We have held that the denial of a peremptory removal must be challenged via a petition for a writ of prohibition. *State v. Cermak*, 350 N.W.2d 328, 331 (Minn. 1984). A writ of prohibition "is an extraordinary writ issued out of [an appellate court] for the purpose of keeping inferior courts or tribunals or other officials invested with judicial or quasi-judicial authority from going beyond their jurisdiction." *State ex rel. United Elec., Radio & Mach. Workers of Am. v. Enersen*, 230 Minn. 427, 438, 42 N.W.2d 25, 31 (1950). "[A] defendant's failure to seek a writ of prohibition constitutes waiver of further appellate review 'when the issue involves the right of *peremptory removal*.' " *Hooper v. State*, 838 N.W.2d 775, 789 n.4 (Minn. 2013) (quoting *State v. Dahlin*, 753 N.W.2d 300, 304-05 (Minn. 2008)).

5

We require that peremptory removal denials be challenged via the writ in order to "avoid a waste of time, resources, and effort by the parties and the court system." *Dahlin*, 753 N.W.2d at 304; *see also State v. Azure*, 621 N.W.2d 721, 725 n.3 (Minn. 2001). It makes sense that a denial of peremptory removal should be subject to immediate review; otherwise, the district court could be "clearly exceeding its legitimate power and authority" solely because of a technical error. *State ex rel. Jonason v. Crosby*, 92 Minn. 176, 178, 99 N.W. 636, 636 (1904); *see also McClelland v. Pierce*, 376 N.W.2d 217, 219 (Minn. 1985) ("[I]f a trial judge refuses to honor an affidavit of prejudice properly filed pursuant to [the civil removal rule], any further exercise of judicial power is unauthorized and a writ of prohibition is the appropriate form of relief.").

In addition to peremptory removals, a party may seek to disqualify a judge at any point in the proceeding for cause:

> A judge must not preside at a trial or other proceeding if disqualified under the Code of Judicial Conduct. A request to disqualify a judge for cause must be heard and determined by the chief judge of the district or by the assistant chief judge if the chief judge is the subject of the request.

Minn. R. Crim. P. 26.03, subd. 14(3). Unlike the court of appeals, we have never held that the denial of a motion to remove a judge for cause must be challenged via a petition for a writ of prohibition. *See Hooper*, 838 N.W.2d at 789 n.4. To the contrary, we have considered whether a judge was disqualified—the standard to remove a judge for cause under Minn. R. Crim. P. 26.03, subd. 14(3)—when the issue was not even raised in the

district court.[3]  *See State v. Schlienz*, 774 N.W.2d 361, 365-69 (Minn. 2009); *State v. Dorsey*, 701 N.W.2d 238, 245-49 (Minn. 2005).

There are important distinctions between a peremptory removal and a removal for cause.  On petition for a writ, an appellate court may determine that a district court erroneously denied a request for peremptory removal by examining three simple criteria: whether the notice to remove was properly filed, timely served, and effective.  *See* Minn. R. Crim. P. 26.03, subd. 14(4); *Dahlin*, 753 N.W.2d at 305-06.  If those criteria are met, then a district court judge exceeds "legitimate power and authority" by remaining on the case, *Crosby*, 92 Minn. at 178, 99 N.W. at 636, and the issue is capable of immediate resolution.  By contrast, a request to disqualify for cause might well involve a nuanced scrutiny of the record, not the summary examination required to decide a request for peremptory removal.

Accordingly, we conclude that a petition for a writ of prohibition is not required to obtain appellate review of a request to disqualify for cause under Minn. R. Crim. P. 26.03, subd. 14(3).  The court of appeals precedent to the contrary is overruled.

### B.

The court of appeals also held that Finch waived his right to have the chief judge hear his removal motion.  *Finch*, A14-0203, 2014 WL 4494409 at *1-2.  "Waiver is the voluntary relinquishment of a known right."  *State v. Jones,* 772 N.W.2d 496, 504 (Minn.

---

[3]     To be sure, we encourage litigants to use the procedure outlined in Minn. R. Crim. P. 26.03, subd. 14(3), and make motions to remove for cause at the district court. Otherwise, an appeal will be decided based on the plain-error standard.  *See State v. Schlienz*, 774 N.W.2d 361, 365-69 (Minn. 2009).

7

2009).    Noting that subdivision 14(3) contains a "clear directive" (the motion to disqualify a judge for cause "must be heard and determined by the chief judge"), the court of appeals held that Finch waived his right to have the motion heard by the chief judge by "presenting his motion to the district court judge he sought to remove."  *Finch*, A14-0203, 2014 WL 4494409 at *2.

The rule, clearly and unambiguously, directs the chief judge to hear and determine a "request to disqualify a judge for cause."  Minn. R. Crim. P. 26.03, subd. 14(3).  But, as the court of appeals acknowledged, Finch cannot be faulted for first asking the judge for voluntary disqualification.  Under court of appeals precedent, which we endorse today, a party is entitled to ask the district court judge directly for voluntary disqualification.  *See State v. Poole*, 472 N.W.2d 195, 197 (Minn. App. 1991) (noting that "a party should not be discouraged from seeking to have the trial judge recuse himself or herself").

The problem with the court of appeals' waiver analysis is that Finch made his motion in the alternative.  He sought voluntary disqualification and, in the alternative— that is, if the judge declined to disqualify voluntarily—Finch asked for an order "directing the Chief Judge of the District Court to make a determination as to whether this [judge] should hear [the case]."[4]  Thus, Finch did not waive his right to have his removal motion heard and decided by the chief judge.

---

[4]    Finch's memorandum in support of the motion made clear what he was asking: "[i]f the Court will not voluntarily recuse herself, Mr. Finch asks that the Chief Judge of the District Court order her removal and substitute an alternative judge to hear the probation violation hearing."

The court of appeals also concluded that Finch should have sought review by the chief judge "between November 1, when the district court denied his motion, and November 6, when the probation-violation hearing concluded." *Finch*, 2014 WL 4494409 at *2. We disagree for two reasons.

First, the court of appeals apparently did not appreciate the sequence of the proceedings. It is accurate to state that the district court denied the motion on November 1 and concluded the probation violation hearing on November 6. But Finch did not have time to seek review after his motion was denied. Immediately following the denial of his motion on November 1, and in the next breath, the district court commenced the probation revocation hearing and took testimony from several witnesses.

Second, Finch sufficiently preserved the error in the district court. The district court definitively denied his motion in its entirety, which included the denial of his alternative motion to refer the motion to the chief judge. Finch did not need to take any additional steps to preserve the issue for appeal.

Thus, the district court's decision on Finch's request to disqualify was properly before the court of appeals, and is properly before us. We now consider the merits of his appeal.

III.

While the district court judge had authority to hear and decide the request to disqualify, in the first instance, the judge had no authority to deny Finch's alternative request to refer the removal motion to the chief judge. The denial of the motion in its

9

entirety deprived Finch of his right under Minn. R. Crim. P. 26.03, subd. 14(3), to have the chief judge hear and determine his request. Thus, the district court erred.

Even so, we must determine if the error is subject to harmless error or structural error review. The latter is appropriate when errors are "defects in the constitution of the trial mechanism." *State v. Dorsey*, 701 N.W.2d 238, 252 (Minn. 2005) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991)). In other words, structural errors are those that "deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair.' " *Neder v. United States*, 527 U.S. 1, 8-9 (1999) (quoting *Rose v. Clark*, 478 U.S. 570, 577-78 (1986)). The "presence of a partial judge" is one such structural error. *Dorsey*, 701 N.W.2d at 252 (citing *Fulminante*, 499 U.S. at 309).

The right central to the district court's error—to have the chief judge hear a disqualification motion—certainly implicates the structural right to have an impartial judge. But it is not the same. The right to have the chief judge decide a disqualification motion is a mechanism to protect against the possibility of a disqualified judge remaining on the case. The failure to follow the procedure, by itself, did not deprive Finch of a "basic protection" without which the result was fundamentally unfair. *See Neder*, 527 U.S. at 8-9.

Thus, we apply harmless error analysis, which requires us to determine if the district court's error affected a substantial right. *See* Minn. R. Crim. P. 31.01. In most situations, an error affects substantial rights if "the error was prejudicial and affected the

10

outcome of the case." *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998). Put another way, an error affects a defendant's substantial rights if there is a reasonable likelihood that the error had a "significant effect" on the verdict. *State v. Sontoya*, 788 N.W.2d 868, 873 (Minn. 2010).

But a case involving a *potentially* disqualified judge is different. In such a case, the substantial right implicated is the "right to a fair hearing before an impartial tribunal with a decision maker who does not appear to favor one side." *State v. Schlienz*, 774 N.W.2d 361, 367 (Minn. 2009). Therefore, on appeal, Finch does not have to show that the outcome of the proceeding was prejudiced by the error, but instead must show that the failure to disqualify affected his substantial right to a fair hearing before a decision maker who does not appear to favor one side.

A.

A judge is disqualified "due to an appearance of partiality" if a "reasonable examiner, with full knowledge of the facts and circumstances, would question the judge's impartiality." *In re Jacobs*, 802 N.W.2d 748, 753 (Minn. 2011). A disqualification motion is not evaluated from "the perspective of a chief judge," but rather from the perspective of a "reasonable examiner": "an objective, unbiased layperson with full knowledge of the facts and circumstances." *State v. Pratt*, 813 N.W.2d 868, 876 n.8 (Minn. 2012) (citation omitted) (internal quotation marks omitted).

In his disqualification motion, Finch offered multiple arguments that the judge was biased against him. One is of particular concern: that the judge "had already decided on executing . . . Finch's sentence."

11

At a scheduling hearing, the judge discussed a prosecution offer by which Finch would agree to have the sentence executed for the probation violation in exchange for dismissal of his felony escape case. Finch's counsel advised the judge that Finch rejected the offer, and stated that "I don't know what the position of probation is, whether they believe . . . the violation was significant enough to invoke that third *Austin* factor. I'm not sure if the Court's position as to whether this single, somewhat technical violation is worthy of execution, if that's the Court's position." The following exchange then occurred.

| | |
|---|---|
| [Judge]: | So the 36-month execution on the probation case was rejected by Mr. Finch? |
| [Finch's counsel]: | That's correct, Your Honor. |
| [Judge]: | And counsel wasn't present, I don't believe, during the sentencing of Mr. Finch? |
| [Finch's counsel]: | That's correct, Your Honor, I was not. |
| [Judge]: | Then you don't know what Mr. Finch was told at the time he was sentenced and at the time the Court made a determination to do a dispositional departure at that time on an Assault Second Degree where a gun was involved; you did not hear the conversation that I clearly had with your client, Mr. Finch, at that time, did you? |
| [Finch's counsel]: | I did not, Your Honor. |
| [Judge]: | Okay; perhaps you need to go back and discuss, and find out from whoever covered the case at that time, exactly what was specifically stated when I made my decision to depart, because maybe that history would be of some benefit to you and your client. It has nothing to do with the third factor; it has more to do with what I told you, at the time I decided to make that departure. |

12

The judge provided no further detail about the comments to Finch's prior counsel. But, after Finch brought his disqualification motion, the judge, in denying the motion in its entirety, described the prior conversation in detail:

> [T]he Court made it very clear to Mr. Finch that the Court was going out on a limb with regards to departing, and that the Court expected that he was going to take advantage of this opportunity and make some changes in his life. The Court made it very clear at the time that Mr. Finch, if he had *any* probation violations of *any* of the conditions of his probation, *the Court would be executing his prison time*.

(Emphasis added). Additionally, in denying the motion, the judge expressed displeasure that Finch had appealed his original conviction:

> [This] caus[es] the Court to reflect on [Finch's] honesty at the time that he was sentenced of accepting responsibility. That certainly flies in the face of an appeal of his stipulated facts trial. So I wonder if the Court was just duped at that time regarding Mr. Finch's intentions of turning his life around. If that's the case, the Court is somewhat disappointed.[5]

Our law requires that, before revoking probation, the court must: "1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and 3) find that [the] need for confinement outweighs the policies favoring probation." *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). The judge's remarks indicate that the judge could not impartially make the findings required by the second and third *Austin* factors.

---

[5] When denying the request to disqualify, the judge also misstated key facts, including that Finch left the workhouse to go to Chicago, and that he was picked up on a warrant. The record is clear that Finch went to Milwaukee to attend a relative's funeral and, upon his return to Minnesota, turned himself in.

We understand the concerns of the district court when a probationer violates a condition of his probation, especially when probation was ordered as part of a downward dispositional departure. But, as we have emphasized, in considering whether to revoke probation, district court judges "must take care that the decision to revoke is based on sound judgment and not just their will." *Austin*, 295 N.W.2d at 251. Judges must remain impartial by not prejudging; they must "maintain[] an open mind." *Schlienz*, 774 N.W.2d at 369. And judges "should be sensitive to the 'appearance of impropriety' and should take measures to assure that litigants have no cause to think their case is not being fairly judged." *McClelland v. McClelland*, 359 N.W.2d 7, 11 (Minn. 1984). Because the district court judge unequivocally told Finch that the court would revoke his probation for any violation, and because the judge speculated that Finch had "duped" the court when he exercised his right to appeal, a reasonable examiner would question whether the judge could impartially conduct the proceeding under the *Austin* factors. Thus, we hold that the judge was disqualified from the probation revocation proceeding.[6]

B.

Because the district court judge was disqualified, we next decide whether reversal is required. We have said that "when a defendant has been deprived of an impartial judge, automatic reversal is required." *Dorsey*, 701 N.W.2d at 253. In a case involving the *appearance* of partiality, we have applied a three-factor test to determine whether a

---

[6] By so holding, we do not imply that, at sentencing, judges may not warn probationers that a violation of probation can have serious ramifications. That can be done without announcing or implying prejudgment of a probation revocation proceeding.

reversal is required. *Powell v. Anderson*, 660 N.W.2d 107, 120-21 (Minn. 2003) (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988)).[7] And, in yet another case of a disqualified judge, we ordered a new trial without reaching the issue of whether the error was structural. *See State v. Pratt*, 813 N.W.2d 868, 878 n.9 (Minn. 2012) (new trial required applying either structural error standard or *Liljeberg* factors).

Here, the record indicates that the district court prejudged a probation revocation proceeding, reasonably calling into question the judge's impartiality. Regardless of which standard is applied, the district court judge's presence in the probation revocation proceeding requires vacatur.

IV.

For the foregoing reasons, we reverse the decision of the court of appeals, vacate the district court's probation revocation order, and remand for further proceedings before a different district court judge assigned by the chief judge.

Reversed and remanded.

---

[7] *Powell* involved a circumstantial disqualification that might allow the failure to disqualify to be harmless. 660 N.W.2d at 110 (involving respondents who were represented by the same law firm that represented a trust, of which the appellate judge was the trustee). *See Liljeberg*, 486 U.S. at 862 ("As in other areas of the law, there is surely room for harmless error committed by busy judges who inadvertently overlook a disqualifying circumstance.").

15