*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0490**

State of Minnesota,
Respondent,

vs.

Erika Anne Seibold,
Appellant.

**Filed January 4, 2016
Affirmed
Reyes, Judge**

Hennepin County District Court
File No. 27CR1028941

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Veronica May Surges, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Halbrooks, Presiding Judge; Reyes, Judge; and

Klaphake, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**REYES**, Judge

Appellant challenges the district court's decision to revoke the stay of execution on her 88-month sentence. Because the district court properly applied the *Austin* factors to the facts of appellant's case, we affirm.

## FACTS

In early 2010, appellant Erika Anne Seibold, along with a few other people, broke into several vehicles to steal credit cards, checkbooks, and any other valuables. They would then head to nearby stores to make unauthorized purchases with the stolen credit cards or checks. Finally, the architect of this scheme would resell the purchased items. Appellant was arrested in connection with this conduct on March 26, 2010. On June 30, 2010, appellant pleaded guilty to one count of identity theft. During the time between appellant's guilty plea and sentencing on December 19, 2012, appellant was highly cooperative with the state and helped the state convict several of appellant's co-defendants. As a result, on the prosecutor's recommendation, the district court stayed appellant's 88-month sentence and placed her on probation for five years.

In May 2013, appellant violated the terms of her probation by consuming alcohol. On July 1, 2013, appellant was convicted of giving a false name to a peace officer. At the time of the July 1 incident, appellant had an alcohol concentration of 0.174. On November 29, 2013, appellant was identified on video and later admitted to stealing a purse.

A probation-violation hearing was scheduled for February 13, 2014, but was continued to May 14, 2014, and continued again to September 29, 2014. During that time, appellant violated her probation by using alcohol and other illegal substances in March and August of 2014. At the September 29 hearing, appellant admitted to violating the conditions of her probation and waived her right to a contested hearing. At that time, probation had filed five probation-violation notices. The district court imposed an intermediate sanction of 180 days on electronic home monitoring. However, the judge who presided over appellant's probation-violation hearing warned appellant that if she committed a sixth probation violation, she would be sent to prison. Additionally, the judge stated that, in the event she did not preside over appellant's next probation-violation hearing, she would tell her judicial colleagues that they would have to execute appellant's sentence "or else see me."

Subsequently, while on electronic home monitoring in December 2014, appellant violated her probation by using alcohol. On January 16, 2015, appellant submitted a urine sample that tested positive for methamphetamine, and appellant later admitted to using on January 13, 2015. As a result of appellant's continued alcohol and drug use, a probation-violation hearing was held on January 23, 2015. Probation recommended that the remainder of appellant's sentence be executed, and thereafter, a contested probation-violation hearing was scheduled.

The contested hearing was held on February 12, 2015. A member of the Hennepin County Probation Felony Court Unit testified on behalf of probation, and appellant also testified. At the close of the hearing, the district court found that (1) appellant's

3

violations were proven by clear and convincing evidence; (2) the violations were inexcusable; and (3) the need for confinement outweighed the policies favoring probation. Accordingly, the district court executed appellant's 88-month sentence. This appeal follows.

## D E C I S I O N

**I.      The district court did not abuse its discretion by revoking appellant's probation.**

Appellant argues that the district court abused its discretion by revoking her probation. When a probationer violates a condition of probation, the district court may continue probation, revoke probation and execute the stayed sentence, or order intermediate sanctions. Minn. Stat. § 609.14, subd. 3 (2014). Before revoking probation, the district court must (1) identify the specific condition or conditions that were violated; (2) find that the violation was intentional or inexcusable; and (3) conclude that the need for confinement outweighs the policies favoring probation. *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). Whether the district court has made the required findings is a question of law reviewed de novo. *State v. Modtland*, 695 N.W.2d 602, 605 (Minn. 2005). But the district court is afforded broad discretion in determining if sufficient evidence exists to revoke probation. *Austin*, 295 N.W.2d at 249. If adequate findings were made, we will not reverse a district court's decision to revoke probation absent a clear abuse of that broad discretion. *Modtland*, 695 N.W.2d at 605.

4

## A. Treatment in prison

Appellant argues that the district court abused its discretion in concluding that, under the third *Austin* factor, the need for confinement outweighs the policies favoring probation when no evidence in the record demonstrates that appellant will receive chemical-dependency or mental-health treatment in prison. We disagree.

In finding that the need for confinement outweighs the policies favoring probation, courts should consider whether

> (i) confinement is necessary to protect the public from further criminal activity by the offender; or (ii) the offender is in need of correctional treatment which can most effectively be provided if [s]he is confined; or (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

*Id.* at 607. The district court stated that, under the second sub-factor, appellant's need for treatment would be most effectively addressed if she were confined. Appellant contends that there is limited availability in the chemical-dependency treatment program at the facility where she will be incarcerated, and the last time she was in prison, she did not receive this treatment. Further, appellant contends that, the last time she was in prison, her mental-health needs went largely unaddressed. But, the record reflects that appellant did receive mental-health treatment during her prior incarceration. And appellant's experts acknowledged that appellant may not have previously received chemical-health treatment "due to [her] fairly short period of incarceration."

Moreover, appellant was given several chances to participate in community-based treatment while on probation. Appellant met once a week with a worker from Adult Rehabilitative Mental Health Services. She also attended dialectical behavioral therapy

once a week to address her borderline personality disorder. And twice a month, appellant participated in the Bemidji Area Program for Recovery, an outpatient chemical-dependency treatment program. However, despite the services provided, appellant continued to use drugs and consume alcohol.

Appellant asserts that "one of the most important factors to consider before revoking . . . probation is whether [the probationer] has exhausted community treatment resources." Appellant highlights that both her probation officer and sentencing consultant agreed that appellant had not "exhausted the community options available to her" and recommended that appellant be placed in an inpatient treatment program. However, the district court was not required to consider whether appellant "exhausted community treatment resources." *See id.* at 607-08. As previously discussed, appellant was offered various forms of treatment but "failed to take advantage of the opportunity or to show a commitment to rehabilitation so it was not unreasonable to conclude that treatment had failed." *Austin*, 295 N.W.2d at 250.

Appellant emphasizes the district court's explicit statement as to the first sub-factor that it did not anticipate appellant would commit any further criminal acts. Additionally, appellant notes that the district court did not make any remarks regarding

6

the third sub-factor, the seriousness of appellant's probation violations.[1] This argument is unavailing. The existence of any one of the above noted sub-factors is sufficient to justify a finding that the need for confinement outweighs the policies favoring probation. *Modtland*, 695 N.W.2d at 607.

Finally, appellant asserts that her perspective regarding treatment has changed, and she is now amenable to treatment. But the district court discounted appellant's testimony as self-serving. Part of the district court's role as factfinder in a probation-revocation hearing is to judge the credibility of witnesses, and this court defers to the district court's credibility evaluations. *State v. Losh*, 694 N.W.2d 98, 102 (Minn. App. 2005). The district court found that appellant had ostensibly "shown an amenability to treatment" in the past. However, as late as January 2015, appellant's willingness to commit herself to treatment had not manifested itself.

The district court, apparently concerned that appellant was not taking treatment seriously, observed that appellant had been given opportunities to participate in treatment programs in the past but failed to follow through, and believed that the only place where appellant could seriously focus on her health and not be distracted was in prison. The "district court has broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion."

---

[1] Throughout her brief, appellant disputes the number of violations and specific violations relied on by the district court in deciding to revoke probation. But the district court based its decision to revoke appellant's probation on violations that were appropriately before it. The district court did not rely on uncharged and unsubstantiated evidence. Rather, the district court relied on violations of which appellant was given notice and that appellant admitted committing.

*Modtland*, 695 N.W.2d at 605. The district court's conclusion that appellant needs treatment and that prison is the only place "that would have [her] attention for a significant amount of time" was not an abuse of discretion.

**B.    Statements by the district court**

Appellant asserts that the revocation decision was based on a "no second chances" policy and was the sort of "reflexive reaction" that both *Austin* and *Modtland* prohibit. We are not persuaded.

The proper inquiry under *Austin* and *Modtland* is whether the decision to revoke was based on "a reflexive reaction to an accumulation of technical violations" or whether the "offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *Austin*, 295 N.W.2d at 251. The record demonstrates that the district court's decision appropriately focused on appellant's behavior, rather than on her accumulation of technical violations, when it revoked appellant's probation. Appellant violated her probation on numerous occasions in late 2013 and throughout 2014, but the district court did not revoke appellant's probation at that time. However, appellant again committed violations by consuming alcohol and using illegal drugs. Therefore, the district court's determination that the best course of action for appellant was for her to be incarcerated and receive treatment in prison was justified under *Austin*. *Id.* at 250-51.

Appellant further argues that the district court's statements demonstrated its inability to be impartial. The Minnesota Supreme Court recently addressed similar statements made by a district court in *State v. Finch*, 865 N.W.2d 696 (Minn. 2015). In reviewing the district court's statements at the revocation hearing, the supreme court

8

concluded that they would have caused "a reasonable examiner [to] question whether the judge could impartially conduct the proceeding under the *Austin* factors." *Id.* at 705.

There are commonalities between the statements made by the district court in *Finch* and the instant case. In *Finch*, the district court "unequivocally told Finch that the court would revoke his probation for any violation." *Id.* at 704. Likewise, here, the district court told appellant, "[I]f you come back on your sixth probation violation, I will have determined that you are not amenable to probation, and our only recourse then would be then (sic) to send you to prison." However, despite those similarities, *Finch* is inapposite for two reasons. First, appellant at no point moved to disqualify any of the district court judges who presided over her probation hearings as occurred in *Finch*. Second, the judge who made the cautionary statements at appellant's probation-violation hearing did not ultimately preside over appellant's probation-revocation hearing. Following testimony at the revocation hearing, the district court applied the *Austin* factors to appellant's case. The court made no reference to the statements made at the prior hearing, and there is no indication that the decision to revoke appellant's probation was influenced by the prior judge's comments.

**Affirmed.**

9