*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0676**

State of Minnesota,
Respondent,

vs.

Shawn Timothy Zitzloff,
Appellant.

**Filed February 1, 2016
Affirmed
Halbrooks, Judge**

Douglas County District Court
File No. 21-CR-12-1416

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Chad M. Larson, Douglas County Attorney, Alexandria, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Stauber, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Appellant challenges the revocation of his probation, arguing that the district court abused its discretion by reflexively revoking his probation based on statements at sentencing that the district court would do so after any violation. We affirm.

## FACTS

Appellant Shawn Zitzloff pleaded guilty to first-degree felony driving while impaired (DWI). This was Zitzloff's tenth DWI conviction. The district court granted a downward dispositional departure and imposed a 57-month stayed sentence with seven years of probation. The district court ordered Zitzloff to abstain from drugs and alcohol, to follow the general rules and conditions of probation, and to serve nine months in jail. Before announcing the sentence, the district court stated:

> You're going to prove me right or you're going to prove me wrong, Mr. Zitzloff. And I don't want you to prove me wrong.
>
> But I'm warning you. This is the deal.
>
> If you have any violations, I'm going to commit you to prison. You're on the shortest leash possible.
>
> I can't afford to take a risk with public safety. I don't want you out drinking and driving and injuring yourself or others or killing yourself or others, because I've had numerous of those cases, and then it's on my conscience.
>
> So I'm going to give you this opportunity, but you need to prove me right.
>
> And if you don't, don't ask for another opportunity the next time you come in.
>
> I will listen to what you have to say. I will consider the factors. And I most likely will send you to prison. Just so we have a clear understanding between you and me.

Zitzloff served his time in jail and was released on January 2, 2015. The same day that Zitzloff was released from jail, he violated his probation by consuming alcohol. He later violated his probation by missing a scheduled meeting with his probation agent on January 5 and by lying to his probation agent. Zitzloff admitted these violations at the probation-violation hearing. Before resentencing Zitzloff, the district court explained:

2

I've given Mr. Zitzloff a final chance. I told him at the time of sentencing in June, or whenever it was, that I didn't normally depart from the guidelines, that I thought his case was worthy of that attempt, and here we are again two days after he gets out from jail.

I warned him about this. I'm sure I did because I always do when I depart.

. . . .

I gave you a chance and didn't send you to prison. Those old adages are really true. It's the "Fool me once, shame on you. Fool me twice, shame on me."

So I'm not taking it anymore. I gave you a chance and you didn't comply with it. In fact, you didn't make it a day, really.

And it was just not a small, minimal violation; it was a bad violation to the point where you were intoxicated, blacked out, apparently hurt your nose somehow, got in a fight, or whatever you did.

. . . .

The need for confinement at this point outweighs the policies favoring probation.

At some point, judges have nothing left to do but say, "I'm going to have to send you to prison because there's no alternative," and we've reached it.

Confinement here is necessary to protect the public from further criminal activity.

I would be scared to let Mr. Zitzloff out on any circumstance at this point without having the chance of somebody being killed on a street where he's driving a vehicle while intoxicated.

The need for correctional treatment can most be effectively provided if he's confined. Otherwise, there's no guarantee that he would even stay wherever he was sent.

And it would finally and [un]duly depreciate the seriousness of the violation if probation were not revoked because of his extensive history of DUIs.

The district court revoked Zitzloff's probation and executed the 57-month prison sentence. This appeal follows.

3

# DECISION

Zitzloff argues that the district court abused its discretion by revoking his probation. Before revoking probation, a district court must "1) designate the specific condition or conditions that were violated; 2) find that the violation was intentional or inexcusable; and 3) find that need for confinement outweighs the policies favoring probation." *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). A district court has "broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *Id.* at 249-50. But whether the district court made the findings required under *Austin* is a question of law, which we review de novo. *State v. Modtland*, 695 N.W.2d 602, 605 (Minn. 2005).

The district court made sufficient findings to satisfy the first two *Austin* factors. Under the first *Austin* factor, the district court found that Zitzloff violated three conditions of his probation. Zitzloff failed to abstain from alcohol, failed to report to his probation agent, and failed to be truthful with his probation agent. As for the second *Austin* factor, the district court found that the violations were intentional and inexcusable. Zitzloff testified about these three violations and admitted to each of them.

When assessing the third *Austin* factor, a district court must consider whether:

> (i)      confinement is necessary to protect the public from further criminal activity by the offender; or
> (ii)     the offender is in need of correctional treatment which can most effectively be provided if he is confined; or
> (iii)    it would unduly depreciate the seriousness of the violation if probation were not revoked.

*Id.* at 607 (quotation omitted).

4

The district court addressed these three issues when it determined that the need for confining Zitzloff outweighs the policies favoring probation. The district court found that confinement is necessary to protect the public from further criminal activity because of the possibility that Zitzloff could kill somebody if he drove while intoxicated. The district court found that the need for correctional treatment would be most effectively provided if Zitzloff were confined because otherwise there would be no guarantee that Zitzloff would stay in treatment. And the district court found that it would unduly depreciate the seriousness of the violation if probation were not revoked because of Zitzloff's extensive history of driving while impaired. These findings are sufficient to satisfy the third *Austin* factor.

Zitzloff argues that the district court abused its discretion because it reflexively revoked Zitzloff's probation based on a "promise" at sentencing that it would do so after any violation. Zitzloff's argument is without merit for two reasons. First, Zitzloff mischaracterizes the district court's statement at sentencing as a promise to reflexively revoke Zitzloff's probation. At sentencing, the district court told Zitzloff, "If you have any violations, I'm going to commit you to prison." But the district court clarified, "I will listen to what you have to say. I will consider the factors. And I most likely will send you to prison." This was not a promise to revoke Zitzloff's probation reflexively. These statements are more accurately characterized as a warning to Zitzloff, who had ten DWI convictions, that the district court would have little tolerance for any probation violations. Such a warning is consistent with the Minnesota Sentencing Guidelines. *See* Minn. Sent. Guidelines 3.B (2014) (stating that when deciding whether to revoke a stayed

5

sentence, "[l]ess judicial tolerance is urged for offenders who were convicted of a more severe offense or who had a longer criminal history").

Second, Zitzloff erroneously claims that the district court "focused" on its statements at sentencing when it revoked Zitzloff's probation. In *State v. Finch*, the supreme court held that a judge was disqualified from presiding over a probation-revocation hearing because the judge "unequivocally told [the defendant] that the court would revoke his probation for any violation." 865 N.W.2d 696, 705 (Minn. 2015). The district court judge in *Finch* "made it very clear" at sentencing that if the defendant "had *any* probation violations of *any* of the conditions of his probation, *the [c]ourt would be executing his prison time*." *Id.* at 704. But the supreme court noted that its holding does "not imply that, at sentencing, judges may not warn probationers that a violation of probation can have serious ramifications." *Id.* at 705 n.6. The situation here is easily distinguishable from *Finch*. The district court stated at sentencing that it would listen to what Zitzloff had to say, that it would consider the factors, and that it would "most likely" revoke Zitzloff's probation if he committed any probation violations. This is not the type of unequivocal promise prohibited by *Finch*. The district court's statements here represent the kind of warning that the *Finch* court deemed permissible.

Because the district court made the required *Austin* findings and carefully considered why the need for confining Zitzloff outweighs the policies favoring probation, the district court did not abuse its discretion by revoking Zitzloff's probation.

**Affirmed.**

6