*317 'LILLEHAUG, Justice
(dissenting),.
I join Parts I, H, and III of the opinion of the court, but I respectfully disagree with Parts IV and V. The district court judge should not have. presided over this first-degree murder case brought by the State of Minnesota at the timé when he was actively negotiating to become a county attorney whose duties included prosecuting on behalf of the State. That he did so created an appearance that he lacked impartiality. To '-maintain public confidence in Minnesota’s judiciary, I would reverse and remand for a new trial.
,1.
The threshold question is whether the issue of the district court judge’s disqualification is properly before our court. The defendant, Jedidiah Dean Troxel, moved to disqualify the judge. The motion was denied by the chief judge' of the judicial district. Troxel sought a writ of prohibition fi’om the court of appeals and moved the district court to continue the trial pending decision on the petition. The district court judge denied the motion for a continuance and, the next day, began the jury trial. Three days later, in the middle of trial, the court of appeals denied the petition. Troxel did not petition our court for expedited review or ask us to halt the trial.
The State contends that, by failing to petition for review, Troxel fdrfeited the issue of disqualification.[1] The court’s opinion avoids resolving this contention and, instead, goes directly to the merits. I agree with the majority that we. need not answer definitively whether, when a party chooses, to petition for a writ, of prohibition and the, court of appeals denies the writ, the party must file a petition for review or be bound by the denial.
Nevertheless, without proposing a general rule of law, my view is that, in the extenuating circumstances of this case, Troxel did not forfeit the disqualification issue. In State v. Finch, 865 N.W.2d 696 (Minn.2015), we allowed a defendant to pursue judicial disqualification on appeal from‘an order revoking probation,, rather than seek an immediate writ of prohibitions because the defendant’s probation revocation .proceeding started almost immediately after his motion for disqualification was denied. We noted that “Finch did not have time-to seek review after his motion was denied.” Id. at 702. The circumstances here are similar. While Troxel’s petition for a writ was pending, the district court judge denied Troxel’s motion for a continuance and, the next day, began .the jury trial. Trial was well underway when the court of appeals denied the petition.
In light of this unusual chronology, I would not hold against Troxel that he did not, in the middle of a jury trial, seek expedited review arid an order to halt the trial. To so hold would riot be in the “interest of justice.” See Minn. R. Civ. App. - P. 103.04; Minn. R.Crim. P. 28.02, subd. 11. Further, the parties have fully briefed the question of - disqualification, see In re Welfare of S.L.J., 782 N.W.2d 549, 554 (Minn.2010) (noting the fact that “both *318 parties have fully briefed the question” militates in favor of review notwithstanding a party’s failure to immediately appeal from an earlier order), and the opinion' of the court decides it.
Accordingly, I must now turn to the question of whether the district court judge was disqualified.
II.
The public’s faith and confidence is critically important to our criminal justice system. Rule 1.2, cmt. 8, Minnesota Code of Judicial Conduct. Accordingly, judges must avoid both actual impropriety and the appearance of impropriety. Id., Rule 1.2. Under Rule 2.11(A) of the Code of Judicial Conduct, a judge is disqualified in any proceeding “in which the judge’s impartiality might reasonably be questioned,” A judge is disqualified “due to an appearance of partiality”.if a “reasonable examiner, with full knowledge of the facts and circumstances, would question the judge’s impartiality.” In re Jacobs, 802 N.W.2d 748, 758 (Minn.2011).[2] As we recognized in State v. Pratt, under the Code, “impartiality” means “the absence of bias, or prejudice in favor of, or against, particular parties or classes of parties ...” 813 NW.2d 868, 876 (Minn.2012). Whether a judge is disqualified presents a question of law, which we review de novo. Id.
Applying .this standard, the issue is whether- a reasonable examiner would question this district court judge’s ability to be impartial. The answer to this question is “yes” because this judge created at least the appearance of partiality in favor of one of the parties in this case: the State. •
Here, the parties are identified in the case caption: State of Minnesota v. Jedidi-ah Dean Troxel. The State was a party. The Minnesota Attorney General and the Pennington County Attorney were attorneys representing, and prosecuting on behalf of, the State.
It is worth recognizing that the district court judge was concerned about the appearance of impropriety here, disclosed his negotiations to become the Marshall County Attorney, and properly recused from cases involving that office. But, critically, he did not recuse from other criminal cases, including this one, in which the State was a party.
By continuing to preside over criminal cases in which the State was a party, while actively negotiating to become a county attorney — the advocate for the State in criminal cases — a reasonable examiner would question the judge’s ability to be impartial. Put another way, a reasonable examiner would see that the judge was seeking to leave his position as umpire[3] in order to join one of the teams: the State. In fact, he did just that; he joined the State’s team about two months after he sentenced Troxel.
But, responds the State, the district court, judge sought to become the Marshall County Attorney, not the Pennington County Attorney. The two county attorneys, asserts the State, are “separate, and one has no control over the other.” The *319 court adopts this distinction between prosecuting offices.
However, the State and the court view the issue through too narrow a lens. The State, not a county attorney or the attorney general, was the real party in interest in the case before the district court judge. Whether the judge’s hoped-for compensation would flow from county or state coffers, the judge was working actively to secure employment that included representing the very party in the case then before him: the State.
Further, we would be myopic if we failed to see the structure of the relationships between and among the county attorneys and the attorney general. The State is their client in common. They share a mission: to prosecute violations of the state criminal code. They work closely with the State’s Bureau'of Criminal Apprehension.[4] All county attorneys and the ■ attorney general are members of the statutorily-created “council” known as the Minnesota County Attorneys Association. Minn.Stat. § 388.19 (2014).[5] ’ Especially in greater Minnesota, the county attorneys and the attorney general work closely together in major criminal matters, handling each other’s cases when faced with specific conflicts or heavy caseloads.[6] Indeed, in this case, both the trial and this appeal were handled primarily by the attorney general. A reasonable examiner would not view the county attorneys, or the attorney general, as “separate,” Rather, a reasonable examiner would view them to be part of the same team.-
The fact situation presented here — a judge presiding over a trial in which the State is a party at the' same time the judge is negotiating to represent the State — -is reminiscent of Scott v. United States, 559 A.2d 745 (D.C.1989), which we cited favorably in Pratt, 813 N.W.2d at 877. In Scott', a District of Columbia Superior Court judge presided over a trial in which the United States was a party. Id. at 747. The government was represented by the United States Attorney. Id. At the same time the judge was presiding, he was negotiating for employment with the Department of Justice’s Executive Office for United States Attorneys. Id. The position he sought — Assistant Director for the Debt Collection Staff-had' little, if any, connection to the dáy-to-dáy trial work of the United Statés Attorney. Id. The job was managerial with no direct litigation control. Id.
Yet, said the District of Columbia Court of Appeals, the fact that the two components of a. large cabinet department were separate as a practical matter did not solve the appearance problem: the judge was presiding over a criminal case prosecuted by one component of the department while the judge was negotiating with another component. Id. at 750.
In the same vein, and considering all of the circumstances here, a reasonable examiner would reasonably question why this district court judge would preside over a *320 criminal case prosecuted by the State during the very time the judge was negotiating for a job that would include prosecuting for the State in other criminal cases.[7] He should not have presided over this trial.
In so concluding, I acknowledge that Troxel has not proven any actual bias. Nor should my conclusion be read to impugn the reputation of the district court judge, who is now a county attorney. Rather,, this is about-our high standard of impartiality; .judges.must both be fair and appear to be fair. Rule 1.2, Code of Judicial Conduct. Our legal system can function “only .so long as the public, having confidence in the integrity of its judges, accepts and abides by judicial decisions.” Complaint Concerning Winton, 350 N.W.2d 337, 340 (Minn.1984). As we have said, “The administration of justice should be beyond all suspicion of possible favoritism. Where the ability of a judge to try a cause fairly and impartially is [reasonably] questioned, he should have no reluctance in stepping aside.”' Jones v. Jones, 242 Minn. 251, 264, 64 N.W.2d 508, 516 (1954). The advice ' of ‘ the 'supreme court of a neighbor state is wise: “jud£es should err on the side of caution by disqualifying themselves in cases raising dose questions [regarding the appearance of partiality].” State ex rel. Heitkamp v. Family Life Servs., Inc., 616 N.W.2d 826, 844 (N.D.2000).
lit.
Because the district court judge should not have presided, I must next consider whether a reversal is required. . As we discussed in Finch, 865 N.W.2d at 705, we have not firmly decided whether a failure to disqualify for an apparent lack of impartiality is structural error or is subject to the three-factor test in Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 864, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988), which we invoked in Powell v. Anderson, 660 N.W.2d 107, 120 (Minn.2003). Those three factors are (1) the risk of injustice to the parties, (2) the risk that denial of relief will produce injustice in other cases, and (3) the risk of undermining the public’s confidence in the judicial process. Powell, 660 N.W.2d at 121.
Although it is a close question, I conclude that, even applying the less-stringent three-factor test, reversal is appropriate here. The risk of injustice to the parties is slight. On the other hand, there is a risk that denying relief will produce injustice in other cases in which judges preside while negotiating their next jobs. As we said in Pratt, which involved a presiding judge as an expert witness retained by the county attorney appearing before him, “reversing in this case will have prophylactic value.” 813 N,W.2d at 878. What tips the.balance toward reversal is the third factor: the public’s confidence in the judicial process is undermined when we do nothing in a criminal case over which a judge presided while seeking to represent one of the parties — the State — as a prosecutor. As the concurrence in Pratt, applying Powell, aptly noted: “The citizens of Minnesota rely *321 on the court to be vigilant in making sure that all cases will be decided in accordance with the highest traditions of the judiciary.” Id. at 879 (Dietzen, J., concurring).
The court should have reversed and remanded for a new trial, presided over by another judge. Therefore, I respectfully dissent.

. The State also argues that the disqualification issue is barred by the doctrine of collateral estoppel. Collateral estoppel "precludes parties from relitigating issues which are identical to issues previously litigated and which were necessary and essential to the former resulting judgment.” Aufderhar v. Data Dispatch, Inc., 452 N.W.2d 648, 650 (Minn.1990). But the doctrine is inapplicable because there is no former judgment here. This matter is before the court on Troxel’s appeal from the judgment in this case. True, this is a petition for postconviction relief in lieu of a direct appeal, but postconviction proceedings and appeals are part of the same case as the trial. Hooper v. State, 680 N.W.2d 89, 92 (Minn.2004).

. The “reasonable examiner” is not an attorney or a judge. It is "an objective, unbiased layperson with full knowledge of the facts and circumstances.” Id.

. As Chief Justice John Roberts famously explained: "Judges are like umpires. Umpires don’t make the rules, they apply them. The - role of an umpire and a judge is critical. They make sure everybody plays by the rules,,” Confirmation Hearings on the Nomination of John G. Roberts, Jr. to be Chief Justice of the United States Before the Senate Comm, on the Judiciary, 109th Cong. 55 (2005).

. Investigators from the Bemidji regional office of the BCA testified in this case. Both Pennington and Marshall are counties covered by the Bemidji regional office and the Roseau field office.

.An example is a pending case in our court, State v. Byron David Smith, Nos, A14-0942, A15-0300. The Washington County Attorney was designated as Special Ássistánt Morrison County Attorney to prosecute a first-degree murder case.

. I agree with the court that disqualification depends on all of the facts and circumstances of each case. Therefore, I disagree with the court that disqualification here would be inconsistent with In re Jacobs, 802 N.W,2d 748 (Minn.2011), which involved a district court judge presiding over a case prosecuted by the employer of the judge’s spouse. In Jacobs, there were three more degrees of separation:
(1) the spouse (2) was not in the criminal division (3) and was an assistant county attorney. Indeed, we distinguished Jacobs in Pratt, 813 N,W.2d at 877: "Unlike Jacobs, here it was the judge himself_” In this pase, it was the judge himself. He was seeking to become a prosecutor — not as an assistant, but as the chief prqsecutor of the county right next door. This case is not Jacobs.