*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-1673**

State of Minnesota,
Respondent,

vs.

Brandon Harley Johansen,
Appellant.

**Filed April 25, 2016**
**Affirmed**
**Larkin, Judge**

Sherburne County District Court
File No. 71-CR-14-344

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Kathleen A. Heaney, Sherburne County Attorney, Dawn R. Nyhus, Assistant County Attorney, Elk River, Minnesota (for respondent)

Rory Patrick Durkin, Giancola-Durkin, P.A., Anoka, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Larkin, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**LARKIN**, Judge

Appellant challenges the district court's revocation of his probation, arguing that he did not intentionally or inexcusably violate probation and that the need for confinement

does not outweigh the policies favoring probation. Because the district court did not abuse its discretion by revoking probation, we affirm.

## FACTS

Respondent State of Minnesota charged appellant Brandon Harley Johansen with third-degree criminal sexual conduct. The complaint alleged that Johansen engaged in sexual intercourse with a 13-year-old girl several times in July 2013. According to the complaint, the victim told law enforcement that Johansen knew that she was 13 years old. Johansen was 19 years old at the time.

In September 2014, Johansen pleaded guilty to third-degree criminal sexual conduct. In December 2014, the district court sentenced Johansen to a stayed 48-month prison term and placed Johansen on probation for 15 years. Johansen's probationary conditions required him to enter and successfully complete sex-offender treatment and follow all recommendations, including adjunctive therapies; to have no unsupervised contact with minor females, including his own daughter, until deemed appropriate by the treating therapist; and to abstain from the use or possession of alcohol or mood-altering substances. Johansen was also required to serve 180 days in jail.

After completing his jail term in April 2015, Johansen obtained a Rule 25 evaluation. The evaluator recommended that Johansen either complete an outpatient chemical-dependency program or attend support meetings, seek a male sober support person, and engage in weekly therapy sessions with a therapist specializing in addiction.

In July 2015, Johansen's probation officer filed a probation-violation report, alleging that law-enforcement officers had found Johansen with a minor female in a hotel

2

room, Johansen appeared to be under the influence of alcohol, Johansen admitted that he had consumed alcohol, Johansen failed a drug test and admitted smoking marijuana, and Johansen was terminated from outpatient sex-offender treatment at CORE Professional Services (CORE) based on his contact with minors and use of alcohol and marijuana.

Johansen appeared in district court and admitted the probation violations. When asked by the district court whether he had any excuse or justification for the violations, Johansen responded that he had "been really depressed about not seeing [his] daughter," though he admitted that this was "not a good excuse." Johansen also explained that since the violations, he had begun treatment for depression and planned to set up a new chemical-dependency evaluation and seek chemical-dependency treatment.

Even though the prosecutor described Johansen as being "on the fast track to prison," she indicated that the state was willing to give him one last chance. She recommended that the district court order Johansen to serve 90 days in jail, reinstate all conditions of probation, and require him to complete an updated chemical-dependency evaluation and to enter a sex-offender treatment program. Johansen asked the district court to impose 30 days of jail time but otherwise appeared to agree with the state's recommendations.

The district court declined to give Johansen another chance on probation for the following reasons:

> I have an untreated sex offender. I have a chemically dependent individual who is untreated. And I have him consorting with minors. I mean, consorting with minors is what got him here in the first place. Obviously the message has not been delivered.

3

. . . .

> Sir, I have some real difficulty in these violations. You were charged and convicted of preying upon a minor female. You were identified as needing some control over alcohol use. You blew off the alcohol use. You blew off the sex offender treatment. You ignored the Court's admonition to have no contact with minors. You're smoking dope. These are horribly serious violations in light of the serious nature of the offenses you have. They are completely without excuse or justification. It leads the Court to conclude that you're not amenable to probationary status. If you had violated perhaps one, or maybe two; but all of these violations just indicate that you're not a candidate for probationary status.
>
> I would be derelict in my oath if I were to allow somebody as dangerous as you out on the streets. You have proven that you're a danger by the original offense; and you have compounded that by failing to undertake the fundamental programming that is designed to minimize your dangerousness. We can't have that.
>
> Accordingly, I am going to find further that public safety would outweigh keeping you on a probationary status; that the probationary status is insufficient to protect the public; that the only rational alternative left to the Court is incapacitation.

The district court revoked Johansen's probation and executed his 48-month prison sentence.[1] Johansen requested reconsideration, and the district court denied his request. Johansen appeals.

---

[1] Johansen also admitted probation violations regarding a separate fifth-degree controlled-substance conviction and asked the district court to vacate the stay of imposition in that case, so he could serve the prison sentence concurrently with the prison sentence in this case. The district court vacated the stay of imposition and imposed a 13-month concurrent prison sentence. Although Johansen asserts that "[the controlled-substance] revocation should be reversed as well," Johansen did not file an appeal in the controlled-substance case, and it is not before us for review. *See* Minn. R. Crim. P. 28.02, subd. 4(1) ("A defendant appeals by filing a notice of appeal with the clerk of appellate courts with proof of service on the prosecutor, the Minnesota Attorney General, and the court administrator for the county in which the judgment or order appealed from is entered.").

4

# DECISION

Before revoking probation, the district court "must (1) designate the specific condition or conditions that were violated; (2) find that the violation was intentional or inexcusable; and (3) find that need for confinement outweighs the policies favoring probation." *State v. Austin*, 295 N.W.2d 246, 250 (Minn. 1980). In assessing the third *Austin* factor, the supreme court has stated that district courts "should refer" to the following American Bar Association Standards for Criminal Justice:

> Revocation followed by imprisonment should not be the disposition . . . unless the court finds on the basis of the original offense and the intervening conduct of the offender that:
>
> (i)  confinement is necessary to protect the public from further criminal activity by the offender; or
> (ii)  the offender is in need of correctional treatment which can most effectively be provided if he is confined; or
> (iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

*State v. Modtland*, 695 N.W.2d 602, 607 (Minn. 2005) (quoting *Austin*, 295 N.W.2d at 251).

"The decision to revoke cannot be a reflexive reaction to an accumulation of technical violations but requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *Austin*, 295 N.W.2d at 251 (quotations omitted). There must be clear-and-convincing evidence that a probation violation exists. Minn. R. Crim. P. 27.04, subds. 2(1)(c)b, 3(1). "The [district] court has

5

broad discretion in determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *Austin*, 295 N.W.2d at 249-50.

Johansen contends that the district court's findings regarding the second and third *Austin* factors are not supported by the evidence. As to the second *Austin* factor, whether the probation violation was intentional or inexcusable, Johansen argues that "there is not sufficient evidence in the record to establish that [he] intended by his actions to violate his probation by drinking or using marijuana." Johansen claims that he was suffering from depression, that he has a chemical-dependency problem, and that he is willing to have an updated chemical-dependency evaluation and follow its recommendations. Johansen's claims are unavailing for the reasons that follow.

Johansen testified that he was aware that one of his conditions of probation was to abstain from alcohol and controlled-substance use. Yet there is no evidence in the record that Johansen sought treatment for his chemical-dependency problem, even though he was aware of that problem and a chemical-dependency evaluator recommended that he either complete an outpatient chemical-dependency program or attend a support group and therapy sessions. Moreover, even though Johansen testified that he was "really depressed about not seeing [his] daughter" and that he began to receive treatment for depression after he violated probation, he did not present any evidence other than his own testimony to show that depression prevented him from complying with his conditions of probation such that his violations were not intentional.

Johansen argues that the probation violations were not inexcusable because the CORE sex-offender-treatment program was willing to allow him to return to the program. Johansen asks: "If CORE was willing to take him back – in fact wanted him back, could these violations be deemed inexcusable?" Apparently, CORE was willing to allow Johansen to participate in sex-offender treatment after a sanction for his probation violations. But CORE's willingness to allow Johansen to participate in its program does not establish that Johansen's probation violations were excusable. Whether the violations were inexcusable was for the district court to determine.

Regarding the third *Austin* factor, whether the need for confinement outweighs the policies favoring probation, Johansen argues that the record does not establish that he is a threat to the public or that he will engage in further criminal activity. Johansen contends that he used alcohol and marijuana to self-medicate his untreated depression, that he is willing to complete a chemical-dependency evaluation and undergo any recommended treatment, and that the behaviors giving rise to the probation violations can and will be corrected in treatment. Johansen asserts that "there was absolutely no evidence indicating that [he] could not, or would not be successful" if the district court had imposed intermediate sanctions and continued probation supervision.

There is little evidence in the record to support Johansen's assertion that he will now take probation seriously. Johansen tested positive for THC and was found to be under the influence of alcohol approximately three months after being released from jail. There is no evidence in the record that he participated in chemical-dependency treatment even though it was recommended to him. CORE reported that Johansen missed scheduled

7

therapy sessions, did not discuss his problems honestly, and otherwise struggled to show motivation while participating in sex-offender treatment before he was terminated from CORE's program. This record supports the district court's determination that Johansen is "not a candidate for probationary status."

Johansen notes that "this was [his] first violation while on probation." Although *Austin* describes revocation as a "last resort," it does not establish a right to one probation violation without revocation. *Id.* at 250. Instead, the supreme court said that "revocation should be used only as a last resort *when treatment has failed.*" *Id.* (emphasis added). Because Johansen did not successfully complete sex-offender treatment and did not enter chemical-dependency treatment despite being instructed to do so, the record supports the district court's implicit finding that treatment has failed. *See id.* at 251-52 (upholding revocation where defendant "ha[d] been offered treatment but ha[d] failed to take advantage of the opportunity or to show a commitment to rehabilitation").

Johansen argues that "the decision to revoke in this case was exactly the type of decision condemned in *Austin* – a reflexive reaction to an accumulation of violations." We disagree. In *Austin,* the supreme court noted that "[i]n some cases, policy considerations may require that probation not be revoked even though the facts may allow it" and emphasized that a probation revocation "cannot be a reflexive reaction to an accumulation of technical violations but requires a showing that the offender's behavior demonstrates that he or she cannot be counted on to avoid antisocial activity." *Id.* at 250-51 (quotations omitted). But the supreme court ultimately concluded that policy considerations required revocation in *Austin*.

8

The circumstances of this case are more egregious than those in *Austin*, which involved a single violation stemming from Austin's failure to follow his probation officer's instruction to timely return to jail if he did not enter a treatment program. *Id.* at 250. Even though the director of the treatment program testified that Austin was a good candidate for the program, the program was willing to accept him, and the conduct underlying the violation was not related to the conduct underlying the offenses of conviction, the supreme court nevertheless held that the district court did not abuse its discretion by revoking Austin's probation. *Id.* at 248-50. The supreme court reasoned that Austin "ha[d] been offered treatment but ha[d] failed to take advantage of the opportunity or to show a commitment to rehabilitation so it was not unreasonable to conclude that treatment had failed." *Id.* at 251. The supreme court also concluded that the record showed that "the seriousness of his violation would be denigrated if probation were not revoked." *Id.*

In this case, Johansen violated three conditions of probation. He failed to complete sex-offender treatment. He failed to abstain from drug and alcohol use. And he had contact with a minor. Johansen's unsupervised contact with a minor female and his failure to complete sex-offender treatment specifically relate to the offense of conviction. *Cf. id.* at 248-50 (upholding probation revocation where the violation was unrelated to the underlying offense). These are not technical probation violations like a minor traffic offense or a failure to report a change of address; they are substantial. *Cf. Black v. Romano*, 471 U.S. 606, 622, 105 S. Ct. 2254, 2263 (1985) (noting that a minor traffic violation may not justify probation revocation); *United States v. Reed*, 573 F.2d 1020, 1025 (8th Cir. 1978) (vacating revocation order where defendant's only probation violations involved

9

failures to report, to give notice of an address change, and to find employment). In sum, Johansen's probation violations are worse than the single violation in *Austin*, which nonetheless justified revocation. *See Austin*, 295 N.W.2d at 248-50 (upholding probation revocation). Johansen's reliance on *Austin* is therefore unavailing.

Johansen also relies on *State v. Finch* to argue that the district court did not undertake a serious review of the third *Austin* factor. 865 N.W.2d 696 (Minn. 2015). In *Finch*, the Minnesota Supreme Court reversed the district court's probation revocation where the district court unequivocally told the defendant that it would revoke his probation for any violation and subsequently revoked the defendant's probation after he violated probation. *Id.* at 705.

At sentencing in this case, the district court told Johansen that he would likely go to prison on a first probation violation. That statement is not as unequivocal as the statement in *Finch* that probation would be revoked if any violation occurred. *See id.* at 704. Moreover, the district court here reasoned that Johansen had several probation violations and that the violations were "horribly serious." The district court explained that Johansen posed a danger to the public such that the need for confinement outweighed the policies favoring probation because he had "proven that [he was] a danger by the original offense" and had "compounded that [danger] by failing to undertake the fundamental programming that is designed to minimize [his] dangerousness." This record shows that the district court adequately considered the third *Austin* factor.

In conclusion, Johansen's violations are not technical, and the district court's revocation decision was not reflexive. "The [district] court has broad discretion in

determining if there is sufficient evidence to revoke probation and should be reversed only if there is a clear abuse of that discretion." *Austin*, 295 N.W.2d at 249-50. The record establishes that treatment had failed and that Johansen could not be counted on to avoid antisocial activity. The district court therefore did not abuse its discretion by revoking Johansen's probation.

**Affirmed.**