**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1493**

State of Minnesota,
Respondent,

vs.

Travis William Mylo Cleary,
Appellant.

**Filed July 5, 2016
Reversed and remanded
Reilly, Judge**

Lyon County District Court
File No. 42-CR-13-948

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Rick Maes, Lyon County Attorney, Abby Wikelius, Assistant County Attorney, Marshall, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Chang Y. Lau, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Jesson, Presiding Judge; Reilly, Judge; and Toussaint, Judge.[*]

**S Y L L A B U S**

When the sole basis for revoking probation is a probationer's termination from drug court and the drug court judge participated in the drug court team's decision to terminate

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

the probationer from drug court, a probationer is entitled to have a judge other than the drug court judge preside over the probation revocation hearing.

**O P I N I O N**

**REILLY**, Judge

Appellant probationer argues that the district court violated his constitutional due-process right to have a "neutral and detached" decision-maker preside at his probation revocation hearing. Because we conclude an objective, unbiased layperson with full knowledge of the facts and circumstances may reasonably question the judge's impartiality at the probation revocation hearing, we reverse the district court's denial of appellant's motion to remove the drug court judge from presiding over the probation revocation hearing, vacate the probation revocation order, and remand for further probation revocation proceedings with a different judge.

**FACTS**

In February 2014, appellant pleaded guilty to second-degree drug sales, Minn. Stat. § 152.022, subd. 1(1), and was sentenced to 81 months in prison. Execution of the sentence was stayed and appellant was placed on probation for ten years. As a condition of probation, appellant was required to enroll in and complete Southwest Community Drug Court (SCDC). The term "drug court" refers to a type of problem-solving court where a judge collaborates with other traditional court participants including prosecutors, public defenders, probation officers, and social workers. The drug court team employs a variety of strategies to support and encourage participants to maintain clean and sober living in order to abstain from repeating the behaviors that brought them into the court system.

2

During appellant's 13-month participation in drug court he remained sober, transitioned into independent living, maintained employment, and became the sole caretaker of his infant son. However, during that time he violated drug court rules seven times. The first six occurred between June 2014 and January 2015. The violations included missing a "call-in," submitting "meetings and hours" slips late on two occasions, turning in a "calendar" late, failing to maintain full-time work hours, and being arrested for driving after revocation.

The seventh violation occurred in March 2015 when the drug court team became aware that appellant had lied to them about a hand injury. Appellant injured his hand in a fight in the summer of 2014, but initially told the drug court team that the injury occurred while he was at work. Other drug court participants were aware of the true cause of the injury and ultimately came forward to the drug court team about the nature of appellant's injury and appellant's dishonesty. The drug court team confronted appellant and he admitted the true nature of the injury and that he "threatened" a participant who came forward by saying, "I wish[] my sisters were up here, because they're not as nice as me," although he claimed that "it wasn't a serious threat." Based on appellant's six previous violations and his dishonesty in the seventh violation, he was terminated from drug court.

The decision-making process in drug court differs from the typical judicial decision-making process. According to the SCDC Guidelines:

> The SCDC drug court teams share a common vision and goals and have agreed to share resources, authority and responsibility for team actions. They will share ownership of the teams' successes and failures. Therefore, the teams will strive for consensus or the "collective agreement" of the group, keeping

3

in mind that a high degree of variation is still possible among individuals. Genuine consensus typically requires more focus on developing the relationships among stakeholders, so that they work together to achieve agreements. Consensus is not a democratic vote. The individuals keep talking and listening until an understanding is reached. Each team member agrees to follow up team decisions with action, as needed. If there are instances where a consensus cannot be reached and a decision is required, the judge will make the final decision on the course of action to be taken.

At appellant's final drug court hearing the drug court judge explained:

[W]e have [spent] time in staffing this week . . . talking about . . . what we can do. [T]he analysis I'm going to share with you includes some of the thought processes that were considered. [T]he circumstances that we have are [your] decisions to involve yourself in clearly inappropriate behavior and then to lie about that behavior, and to maintain that lie over and over again. And then to involve others in that, creating problems for them in their own recovery . . . about being truthful and honest about their circumstances. [T]he real question relates to issues of engaging in criminal thinking and what we can do to try to redirect that. Then we also learned that you found a nice apartment. You had access to financial resources [from] your employer, and then you chose to divert some of those and take that money and, apparently, eventually put it back but, none the less, just didn't have the kind of boundaries there that you have to have to be successful. And, we're back into that problem of criminal thinking. We spent a lot of time talking about what we could do to try to change and . . . redirect that aspect of criminal thinking. And we came to the conclusion that we simply don't know how we can rehabilitate that when it is that deep [seated] and when it has involved so many others over such a long period of time. And that took us to the conclusion that the only decision that we can reach here is to tell you that we're going to have to terminate you from Drug Court participation. Now, that's all taking into account the reality that you have some good sober time and we don't minimize that in any way. But we also recognize that we have to be able to have honesty and we can't have you drawing other people into dishonest behavior, which is what we concluded we have showings of. And so that's a sad thing. There isn't

4

anybody on the Drug Court Team who thought that's a great idea; that that's a great plan. That, however, was . . . the option that we concluded by consensus that we have to reach.

. . .

For what it's worth, I will certainly exchange journals with you.[1]

At the time appellant was terminated from drug court he had maintained sobriety for 552 days. The SCDC guidelines provide "[a]nyone who withdraws or is terminated from SCDC will have their cases returned to District Court for further action. The drug court team may make a recommendation to the Court for their consideration. Termination from SCDC is a violation of probation."

Shortly after appellant was terminated from drug court, a probation violation report was filed against him. The sole basis for the probation violation was appellant's termination from drug court. Because the drug court judge was privy to confidential drug court team discussions and to the decision to terminate appellant from drug court, appellant moved to have the drug court judge disqualified from presiding over the probation violation hearing. The chief judge of the district court heard the motion, determined that "no specific bias or other basis for removal [of the presiding drug court judge] has been proven," and denied appellant's motion.

After a contested probation revocation hearing, the drug court judge determined that (1) appellant violated the terms of his probation by failing to complete drug court, (2) the

---

[1] SCDC participants are expected to write in a journal on a daily basis and exchange that journal with the judge. Participants are informed "[t]he goal is for the judge to get to know you better and understand how you are feeling." The judge is the only person who sees the content of the journal; it is not shared with the other members of the drug court team.

violation was intentional or inexcusable, and (3) "fail[ing] to revoke probation would unduly depreciate the seriousness of the violation and that the need for confinement at this time outweighs policies favoring probation." The drug court judge revoked appellant's probation, reduced his sentence from 81 months to 68 months and executed the sentence. This appeal follows.

**ISSUE**

Was appellant denied his right to a neutral and detached decision-maker at his probation revocation hearing based on the drug court judge's appearance of partiality?

**ANALYSIS**

Appellant argues that the district court violated his constitutional due-process right to have a "neutral and detached" decision-maker preside over his probation violation hearing because the same judge presided over drug court and, as such, a reasonable observer may question his impartiality. "Whether a defendant has been denied due process of law is a question of law that [appellate courts] review de novo." *State v. Beaulieu*, 859 N.W.2d 275, 280 (Minn. 2015), *cert. denied*, 136 S. Ct. 92 (2015).

Appellant participated in drug court as a condition of his probation. Failure to successfully complete drug court violated the terms of his probation. Individuals on probation are entitled to constitutional safeguards before their probation can be revoked. *Pearson v. State*, 308 Minn. 287, 289-90, 241 N.W.2d 490, 492 (1976) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S. Ct. 1756 (1973)).

Among those safeguards to which a probationer is entitled is the right to a revocation hearing being held before "a 'neutral and detached' hearing body." *Id.* at 290, 241 N.W.2d

6

at 492 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 92 S. Ct. 2593 (1972)). The *Morrissey* court explained "due process requires that . . . the determination that reasonable ground exists for revocation . . . should be made by someone not directly involved in the case." 408 U.S. at 485, 92 S. Ct. at 2602; *see Gagnon*, 411 U.S. 778, 93 S. Ct. 1756 (extending the due process constitutional protections enumerated in *Morrissey* to probationers).

Interrelated with the constitutional issue, "[a] judge must not preside at a trial or other proceeding if disqualified under the Code of Judicial Conduct." Minn. R. Crim. P. 26.03, subd. 14(3). "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Minn. R. Jud. Conduct 2.11(A). "Impartiality" is defined as the "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." *State v. Pratt*, 813 N.W.2d 868, 876 (Minn. 2012) (quoting Terminology, Minnesota Code of Jud. Conduct). A judge's impartiality is reasonably questioned when a "reasonable examiner, with full knowledge of the facts and circumstances, would question the judge's impartiality." *State v. Finch*, 865 N.W.2d 696, 703 (Minn. 2015) (citation and internal quotation marks omitted). A disqualification motion is reviewed from the perspective of "an objective, unbiased layperson with full knowledge of the facts and circumstances." *Pratt*, 813 N.W.2d at 876 n.8 (citation and internal quotation marks omitted). There is no "precise formula that can automatically be applied" in making a disqualification determination. *State v. Dorsey*, 701 N.W.2d 238, 248 (Minn. 2005). Thus, the question we address on appeal is not whether the presiding drug court judge was actually biased during the probation revocation hearing,

7

but whether a reasonable examiner would question the judge's impartiality.[2]  As such we consider whether, based on the facts and circumstances, an objective observer would reasonably question whether the presiding drug court judge was able to maintain an open mind at the probation revocation hearing.

Appellant argues that a drug court judge's relationship with a drug court participant places him "far beyond the realm of a 'neutral and detached' decision-maker" and "an objective observer would undoubtedly question the judge's impartiality at later criminal proceedings."  Appellant asserts the drug court judge's ability to be a "neutral and detached" fact-finder at the probation violation hearing is reasonably called into question because the judge oversaw appellant's 13-month-long drug court participation and was directly involved in the decision to terminate appellant from the drug court program. Appellant notes that the judge's drug court role "[a]t the very least . . . created the appearance of bias" against him.

The role of the judge in drug court is adapted from the traditional role of a judge. This is evidenced in the Judicial Code of Conduct, which modifies the rule prohibiting ex parte judicial communication when a judge is presiding over a drug court.  *See* Minn. R. Jud. Conduct 2.9 cmt. 4 ("In [a drug court] capacity, judges may assume a more interactive role with parties, treatment providers, probation officers, social workers, and others.").  A review of appellant's drug court proceedings demonstrates how the judicial role is adjusted. Appellant exchanged a journal with the drug court judge at his weekly drug court

---

[2] In fact, the record demonstrates that the drug court judge admirably fulfilled his role under the drug court model and rules.

8

appearances. In the journal, he was encouraged to share his feelings and to openly discuss his struggles and achievements in his personal life with the judge. And the drug court judge was the only team member to read the contents of appellant's journal. On appellant's one-year sobriety date, the drug court judge and the drug court team gave appellant a party. Thus the relationship between a drug court judge and drug court probationer is more personal than the traditional relationship between a judge and a criminal defendant appearing before that judge.

The state argues that "[t]he fact that [the drug court judge] served as a member of the drug court team would not cause a reasonable examiner to question his ability to be impartial when presiding at the probation revocation hearing." The state also asserts that the drug court judge is not disqualified from presiding over the probation revocation hearing, even though he participated in the decision to terminate appellant from drug court because the information the judge learned about appellant while in drug court was "nonpersonal." But this argument is directly contradicted by the record in this case. Appellant was expected to keep a daily journal and give it to the drug court judge weekly. The goal of the journal-sharing was "for the judge to get to know [him] better and understand how [he was] feeling."

The state notes that "judges are presumed to have the ability to set aside 'nonpersonal' knowledge and make decisions based solely on the merits of cases before them." *Dorsey*, 701 N.W.2d at 249. While this presumption is true in the ordinary criminal case, in drug court, where the judge learns the intimate details of the participant's daily

life, a reasonable observer with full knowledge of these facts and circumstances, could reasonably question the judge's impartiality.

The state further likens the drug court judge's role in presiding over a participant's discharge from drug court and a subsequent revocation hearing to the role of a judge presiding over a child protection, civil commitment, or family law case and then presiding over a related criminal case. According to the state, the drug court judge was acting in his judicial capacity when he participated in the decision to terminate appellant from drug court and "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994); *see id.* at 553, 114 S. Ct. at 1155 ("Also not subject to deprecatory characterization as 'bias' or 'prejudice' are opinions held by judges as a result of what they learned in earlier proceedings."). However, as discussed above, a drug court judge does not serve in the traditional role of a judge. The prior "proceeding" in the present case (which appellant contends constitutes a valid basis for a partiality motion) was the decision to terminate appellant from drug court. And, in this case unlike the other proceedings cited by the state, the drug court judge was not the sole decision-maker regarding the termination decision, but was one member of the drug court team which "share[s] a common vision and goals and . . . agree[s] to share resources, authority and responsibility for the team actions." Further the team "share[s] ownership of the teams' successes and failures. . . . striv[ing] for consensus on the 'collective agreement' of the group." That termination was a team decision as explained by the drug court judge at the termination hearing

> [The drug court team] spent a lot of time talking about what *we* could do to try to change and . . . redirect that aspect of criminal thinking. . . . And that took *us* to the conclusion that the only decision that *we* can reach here is to tell you that *we're* going to have to terminate you from Drug Court participation.

(Emphasis added.) The drug court termination decision is inherently different from other judicial rulings.

Appellant violated a condition of his probation when he was terminated from drug court, and the drug court termination was the sole probation condition relied upon for revoking probation and executing appellant's sentence. As such, we find the state's argument unpersuasive. Due process requires that the determination whether a reasonable ground exists for revocation of probation should "be made by someone not directly involved in the case." *Morrissey*, 408 U.S. at 485, 92 S. Ct. at 2602; *see also Gagnon*, 411 U.S. 778, 93 S. Ct. 1756. Because the drug court judge was directly involved in the decision to terminate appellant from drug court, which was the sole basis to revoke probation, the judge became "directly involved in the case."

Further, based on the unique structure of drug courts, there is no formal record of much of what occurs during the drug court process. Because the journal exchanged between appellant and the drug court judge was confidential, there is no reviewable record concerning the journal. There is also no record of the drug court team's discussions that culminated in the decision to terminate appellant from the program. While these unique features of drug court may be beneficial for probationers during participation in drug court, it makes review of motions to remove for bias on the appearance of bias problematic. "[T]he fact that a judge avows he is impartial does not in itself put his impartiality beyond

11

reasonable question." *State v. Burrell*, 743 N.W.2d 596, 602 (Minn. 2008). This is especially true when the drug court participant, a reviewing court, and the public-at-large are not granted access to the conversations that could reveal whether or not a judge could remain impartial in a subsequent probation revocation hearing.

No Minnesota appellate court has considered whether, upon termination from drug court, a probationer is entitled to have a judge other than the drug court judge preside over the probationer's revocation hearing. Although there is no authority directly on point, we find *Finch* instructive for our analysis. 865 N.W.2d at 696. In *Finch,* a district court judge "unequivocally told [the probationer] that the court would revoke his probation for any violation" in a conversation before the probation violation hearing. *Id.* at 704. The supreme court concluded that under those circumstances "a reasonable examiner would question whether the judge could impartially conduct the proceeding" and held "that the judge was disqualified from the probation revocation proceeding." *Id.* at 705.

In the present case, the drug court team, which included the drug court judge, concluded that appellant "just didn't have the kind of boundaries there that [one] ha[s] to have to be successful," and they "didn't know how [they] could rehabilitate [appellant]" when his "criminal thinking" was so "deep [seated]." The explanation the drug court judge provided for terminating appellant from drug court focused on appellant's dishonesty, some of which was directed at the drug court judge and the drug court team. After reviewing the drug court judge's statement to appellant at the final drug court proceeding, we conclude that an objective observer could reasonably conclude that the presiding drug

12

court judge could not then "maintain an open mind" while making the requisite findings at the probation revocation hearing. *Id.*

Other courts analyzing whether a defendant's due-process rights are violated based on judicial bias or the appearance of judicial bias have reached different results based on the varying structures and procedures of their problem-solving courts.[3] Because other jurisdictions operate under a wide array of drug court procedures we look to national drug court literature for best drug-court practices for guidance.[4] The National Drug Court Institute notes "[t]he safest position is to offer the offender the option to be sentenced by the drug court judge or by another neutral magistrate, and to entertain petitions for recusal if they are proffered by either the defense or prosecution." NAT'L DRUG COURT INST., THE DRUG COURT JUDICIAL BENCHBOOK at 41 (Douglas B. Marlowe & Judge

---

[3] *See State v. Rogers*, 170 P.3d 881, 885-86 (Idaho 2007) (holding that the drug court judge may preside over the termination proceedings, and vacating the appellant's convictions on other due-process grounds); *Walker v. State*, No. 34A02-1101-CR-612, 2012 WL 828487, at *2-3 (Ind. Ct. App. Mar. 13, 2012) (rejecting a drug program participant's assertion that he was denied due process at his termination and sentencing hearing because the judge was biased against him and concluding that an objective, disinterested observer would not entertain significant doubt about the judge's impartiality), *aff'd in part, rev'd in part*, 968 N.E.2d 1292 (Ind. 2012); *Alexander v. State*, 48 P.3d 110, 114 (Okla. Crim. App. 2002) (holding failure to recuse was not plain error but recognizing the potential for bias and noting, in the future, applications for recusal should be granted and the motion to remove the defendant from the drug court program should be assigned to another judge for resolution); *State v. Stewart*, No. W2009-00980-CCA-R3-CD, 2010 WL 3293920, at *4, 10 (Tenn. Crim. App. Aug. 18, 2010) (concluding the due-process clause prevented a judge who had been a member of the defendant's drug court team from later conducting a probation revocation hearing as to the defendant, when the alleged probation violations "are based on the same or related subject matter that has been reviewed" by the judge as a member of the drug court team).

[4] These materials are located on the Minnesota Judicial Branch website. Minn. Jud. Branch, *Adult Drug Court Research & Presentations Resources* (June 2016), http://mncourts.gov/Help-Topics/DrugCourts.aspx.

William G. Meyer eds., 2011) (NDCI *Judicial Benchbook*).[5]   Following these best practices, we hold that when a probationer seeks to disqualify a judge who participated in the decision to terminate him or her from drug court from presiding over a probation revocation hearing based on the probationer's termination from drug court, the judge shall recuse.  When a judge fails to do so in these circumstances, it creates an appearance of partiality, and implicates a violation of a probationer's due-process rights.

Because we conclude that the district court erred in denying the motion to remove the judge based on an appearance of partiality, appellant argues automatic reversal is required and the proper result is to remand for a probation revocation hearing before a different judge.  *See Dorsey*, 701 N.W.2d at 253 ("[W]hen a defendant has been deprived of an impartial judge, automatic reversal is required.").  However, although we conclude the drug court judge was disqualified from presiding over the probation revocation hearing under rule 2.11, this case involves the appearance of partiality not actual partiality.  *See Powell v. Anderson*, 660 N.W.2d 107, 120-21 (Minn. 2003) (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864, 108 S. Ct. 2194, 2205 (1988) (applying a three-factor test to determine whether a reversal is required in a case involving the appearance of partiality)); *see also Pratt*, 813 N.W.2d at 878 n.9 (determining a new trial was required when either structural error standard or *Liljeberg* factors were applied).  As such, we consider "whether we must correct the error in order to ensure the integrity and fairness of the judicial process."  *Pratt*, 813 N.W.2d at 878.

---

[5] Available at http://www.ndci.org/sites/default/files/nadcp/14146_NDCI-_Benchbook_v6.pdf.

> [I]t is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process. We must continuously bear in mind that to perform its high function in the best way justice must satisfy the appearance of justice.

*Liljeberg*, 486 U.S. at 864, 108 S. Ct. at 2205 (internal quotation marks and citations omitted); *Powell*, 660 N.W.2d at 120-21.

In the present case "the risk of injustice to the parties in the particular case" and "the risk of undermining the public's confidence in the judicial process" persuade us that reversal is necessary to correct the error. *Liljeberg*, 486 U.S. at 864, 108 S. Ct. at 2205. The state took no position before the chief judge of the district court on the motion to remove the drug court judge from the probation revocation hearing. As such, we conclude that the risk of injustice to the state in this case is minimal. On the other hand, were we not to reverse and remand this case, the risk of injustice to appellant would be high because of the appearance of partiality and appellant's liberty interests at stake. Appellant has a due-process right to a neutral and detached decision-maker. And reversal would also strengthen the public's confidence in an impartial judicial process for drug court probationers. We remand this case for a new probation revocation hearing before a judge who did not participate in the decision to terminate appellant from drug court in order to ensure appellant is afforded that due-process right. Because we remand for a new probation revocation hearing, we need not address appellant's argument that the district court erred when it revoked appellant's probation.

15

## DECISION

We reverse the district court's denial of appellant's motion to remove the drug court judge from presiding over the probation revocation hearing, vacate the probation revocation order, and remand to the district court for further proceedings before a different judge.

**Reversed and remanded.**