*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0813**

State of Minnesota,
Respondent,

vs.

Aamir Karmoeddien,
Appellant.

**Filed January 17, 2017
Affirmed
Smith, Tracy M., Judge**

Hennepin County District Court
File No. 27-CR-15-3787

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Johnson, Judge; and Smith, Tracy M., Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH, TRACY M.**, Judge

Appellant Aamir Karmoeddien challenges the revocation of his probation, arguing that (1) the district court violated his right to have a neutral and detached decision-maker

preside over his probation-revocation proceedings and (2) the district court abused its discretion in revoking his probation. We affirm.

## FACTS

On September 30, 2015, Karmoeddien pleaded guilty, pursuant to a plea agreement, to driving while intoxicated (DWI). A presentence investigation reported three prior DWIs: (1) Karmoeddien's first DWI involved speeding at 120 mph and an alcohol concentration of 0.22; (2) Karmoeddien's second DWI involved driving on a highway without headlights and an alcohol concentration of 0.16; and (3) Karmoeddien's third DWI involved a refusal to test. The presentence investigation also reported a prior disorderly conduct offense where Karmoeddien had an alcohol concentration of 0.21 and numerous probation violations corresponding with these prior offenses.

On December 1, 2015, the district court sentenced Karmoeddien, in accordance with the plea agreement, to a stayed 42-month prison sentence and placed him on probation for five years. Karmoeddien's relevant probation conditions included abstaining from alcohol, complying with chemical testing, completing chemical health treatment and aftercare, and remaining law abiding. After the district court expressed concern regarding a correlation between Karmoeddien's alcohol use and criminal history, the district court further stated:

> So you are going to be on probation to me, and if you return with a probation violation, from my point of view, the record so far is enough that you will go to prison. So I'm going to tell you that right up front, not as a threat, but simply so we know where we stand, because if you come back here, I'm not going to accept any excuses. You've already violated conditional release, you've already violated probation. You either take this seriously or you don't. And if you don't, you know what the consequences are.

On February 2, 2016, Karmoeddien's probation officer filed a probation-violation report and arrested Karmoeddien for probation violations. The probation-violation report alleged that Karmoeddien (1) failed to remain law abiding based on two counts of misdemeanor domestic assault in December 2015, (2) failed to complete treatment, and (3) failed to abstain from alcohol. With respect to the second and third alleged violations, the report stated that between December 1, 2015 and February 21, 2016, Karmoedden tested positive for alcohol three times; admitted to using alcohol on another, separate occasion; missed nine treatment appointments; and was dismissed from his treatment program prior to completion.

The same district court judge presided at the probation-revocation hearing. At the hearing, the probation officer testified to the information presented in the probation-violation report. The probation officer also testified that she had filed the probation-violation report and requested an arrest-and-detain order, rather than schedule a meeting with Karmoeddien, because "[t]here had been some e-mails back and forth between [the district court] and some attorneys, and [the district court] requested that I issue the warrant and I did." In addition, Karmoeddien testified that he missed a number of treatment sessions due to medical appointments and because his prescribed medications had caused him to oversleep.

The district court found that Karmoeddien had intentionally and inexcusably violated the conditions of his probation by failing to complete treatment, failing to abstain

3

from alcohol, and failing to remain law abiding. The district court also found that public safety needs outweighed public policy of favoring probation because Karmoeddien

> continues to drink and drive, and the facts of the various cases involve accidents, speeding at a hundred miles an hour, wandering around streets in a drunken state, all of which are extremely hazardous to him and to other members of the public. So I think massive efforts have been made to make probation available to him and to assist with his issues through probation and he has simply refused to take advantage of those, so the only remaining alternative to protect public safety is to revoke [probation and impose] the prison sentence.

The district court further noted, "I brought this up at sentencing when I warned [Karmoeddien] about the need to comply with probation." The district court revoked Karmoeddien's probation and executed his 42-month prison sentence.

Karmoeddien appeals.

## D E C I S I O N

**I.     The district court did not violate Karmoeddien's right to have a neutral and detached decision-maker preside over his probation-revocation proceedings.**

For the first time on appeal, Karmoeddien argues that the district court violated his right to have a neutral and detached decision-maker preside over his probation-revocation proceedings. When the question of judicial disqualification is first raised on appeal, we apply a plain-error standard of review:

> Under our plain error analysis, we apply a four-pronged test in which we first consider whether: (1) there was an error; (2) which was plain; and (3) which affected the defendant's substantial rights. If each of these prongs [is] satisfied, we then consider whether to address the error to ensure the fairness and integrity of the judicial proceedings. An error is plain if it contravenes case law, a rule, or a standard of conduct. An error

4

affects substantial rights if it is prejudicial and affects the outcome of the case.

*State v. Schlienz*, 774 N.W.2d 361, 366 (Minn. 2009) (citations and quotations omitted).

Karmoeddien contends that the district court's statements during the sentencing and revocation hearings suggest that the district court prejudged his probation revocation. Individuals on probation are entitled to constitutional safeguards before their probation can be revoked. *Pearson v. State*, 308 Minn. 287, 289, 241 N.W.2d 490, 492 (1976). One of these safeguards is that the revocation hearing must be held before a neutral and detached hearing body. *Id.* at 492. The Minnesota Rules of Criminal Procedure provide, "A judge must not preside at a trial or other proceeding if disqualified under the Code of Judicial Conduct." Minn. R. Crim. P. 26.03, subd. 14(3). Under the Minnesota Code of Judicial Conduct, "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Minn. Code Jud. Conduct Rule 2.11(A). The code defines "impartiality" as "absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." Terminology, Minn. Code Jud. Conduct.

First, Karmoeddien argues that the district court prejudged his probation-revocation hearing, relying on *State v. Finch*, 865 N.W.2d 696 (Minn. 2015). In *Finch*, the supreme court reversed the revocation of probation because "the district court judge unequivocally told [the defendant] that the court would revoke his probation for any violation, and because the judge speculated that [the defendant] had 'duped' the court when he exercised

5

his right to appeal." *Id.* at 705. The district court judge had also stated the following, in denying the defendant's disqualification motion:

> [T]he Court made it very clear to [the defendant] that the Court was going out on a limb with regards to departing, and that the Court expected that he was going to take advantage of this opportunity and make some changes in his life. The Court made it very clear at the time that [the defendant], if he had *any* probation violations of *any* of the conditions of his probation, *the Court would be executing his prison time*.

*Id.* at 704 (alteration in original). In addition, at a scheduling hearing, the district court judge in *Finch* referenced these previous comments in connection with the judge's probation-revocation analysis: "It has nothing to do with the third [*Austin*] factor; it has more to do with what I told you, at the time I decided to make that [downward dispositional] departure." *Id.*

Here, our analysis focuses on the impact of two of the district court's statements: (1) at the sentencing hearing, the district court stated, "[I]f you come back here, I'm not going to accept any excuses"; and (2) at the probation-revocation hearing, the district court stated, "I brought this up at sentencing when I warned [Karmoeddien] about the need to comply with probation." When considered within the context of the full record, we read the district court's first comment as part of an overarching warning to Karmoeddien "that a violation of probation can have serious ramifications." *Finch*, 865 N.W.2d at 705 n.6. Such a warning is permissible. *Id.* The second comment, stated at the revocation hearing, was part of a broader statement regarding the district court's concern that Karmoeddien is "22 years old, he's only been legal to drink alcohol for one year, and he has four DWIs." Both of these comments represent the district court's candid assessment of the gravity of

6

Karmoeddien's situation and his history of criminal offenses involving alcohol. Such comments do not suggest or imply an inability to impartially conduct the revocation analysis.

Second, Karmoeddien asserts that by directing the probation officer to arrest Karmoeddien for alleged probation violations, the judge inserted herself into the probation matter and thus was disqualified. Karmoeddien draws comparisons to *State v. Cleary*, where we reversed revocation of probation because the district court judge was part of the team that had overseen the defendant in drug court and had made the decision to terminate his participation in drug court, which was the sole probation violation. 882 N.W.2d 899, 903, 908 (Minn. App. 2016). The district court's involvement here, however, was distinguishable from the district court's involvement in *Cleary*. Unlike in *Cleary*, the district court was not involved in Karmoeddien's probation violations; instead, Karmoeddien's violations were solely the result of his own decisions and conduct. The district court was not "directly involved in the case" and was not disqualified from presiding over the probation-revocation proceeding. *Id.* at 906.

In sum, the district court's comments and conduct did not constitute plain error, and the district court did not violate Karmoeddien's right to have a neutral and detached decision-maker preside over his probation-revocation proceedings. The record does not indicate any failure by the district court to approach probation revocation with an open mind, and there is no basis for Karmoeddien's assertion that a reasonable examiner would question the district court's impartiality.

**II.    The district court did not abuse its discretion in revoking Karmoeddien's probation.**

Karmoeddien also argues that the district court abused its discretion in revoking Karmoeddien's probation because the state failed to establish that the policies favoring probation were outweighed by a need for confinement. We review the decision to revoke probation for an abuse of discretion. *State v. Austin*, 295 N.W.2d 246, 249-50 (Minn. 1980). The district court's factual findings are subject to a clearly erroneous standard of review. *State v. Critt*, 554 N.W.2d 93, 95 (Minn. App. 1996), *review denied* (Minn. Nov. 20, 1996).

When a defendant violates a condition of probation, the district court may revoke probation and execute the previously stayed sentence. Minn. Stat. § 609.14, subd. 3 (2014). The state has the burden of proving an alleged probation violation by clear and convincing evidence. Minn. R. Crim. P. 27.04, subd. 3. Clear and convincing evidence is demonstrated when the truth of the facts sought to be admitted is "highly probable." *Roby v. State*, 808 N.W.2d 20, 26 (Minn. 2011) (quotation omitted). Before revoking a defendant's probation and executing the stayed sentence, the district court must: "(1) designate the specific condition or conditions that were violated; (2) find that the violation was intentional or inexcusable; and (3) find that need for confinement outweighs the policies favoring probation." *Austin*, 295 N.W.2d at 250. Under the third *Austin* factor, the district court must balance a defendant's interest in remaining at liberty against the state's interest in rehabilitation and public safety, considering whether:

> (i)    confinement is necessary to protect the public from further criminal activity by the offender;

8

(ii) the offender is in need of correctional treatment which can most effectively be provided if he is confined; or

(iii) it would unduly depreciate the seriousness of the violation if probation were not revoked.

*Id.* at 250-51.

Here, the district court concluded that the first and second *Austin* factors were met by finding that Karmoeddien inexcusably violated his probation by failing to participate in treatment and testing positive for alcohol numerous times, including the day after he was sentenced. Karmoeddien's argument focuses on the third *Austin* factor. Specifically, Karmoeddien contends that the district court impermissibly relied on his criminal and probation history in determining that the need for confinement outweighed public policies favoring probation. Caselaw, however, does not preclude consideration of a probationer's pattern of behavior. *See State v. Osborne*, 732 N.W.2d 249, 256 (Minn. 2007) (affirming probation revocation where the district court's *Austin* analysis involved "a full review of [the defendant's] lengthy history of criminal activity and chronic probation and treatment failures"); *see also State v. Rottelo*, 798 N.W.2d 92, 95 (Minn. App. 2011) (affirming probation revocation and noting prior offenses and history of probation noncompliance), *review denied* (Minn. Jul. 19, 2011).

The district court found that policies favoring probation were outweighed by a need for confinement due to Karmoeddien's inability to comply with treatment and to stop drinking, his "constant violations of probation every time he's been on [probation]," and his criminal history involving "accidents, speeding at a hundred miles an hour, wandering

around streets in a drunken state, all of which are extremely hazardous to [Karmoeddien] and to other members of the public." Further, the district court found that "the only remaining alternative to protect public safety is to" revoke Karmoeddien's probation and impose the stayed 42-month prison sentence. These findings were not clearly erroneous.

In sum, the district court did not clearly err in finding that the three *Austin* factors were proved by clear and convincing evidence, nor did its decision to revoke Karmoeddien's probation constitute an abuse of discretion.

**Affirmed.**