*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0614**

State of Minnesota,
Respondent,

vs.

Terry Lee West,
Appellant

**Filed January 30, 2017
Affirmed
Worke, Judge**

Polk County District Court
File No. 60-CR-13-1098

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Greg Widseth, Polk County Attorney, Scott A. Buhler, Assistant County Attorney, Crookston, Minnesota (for respondent)

Rich Kenly, Backus, Minnesota (for appellant)

Considered and decided by Bratvold, Presiding Judge; Worke, Judge; and Stauber, Judge.

# UNPUBLISHED OPINION

**WORKE**, Judge

Appellant challenges his perjury conviction, arguing that (1) the district court admitted statements taken in violation of his *Miranda* rights; (2) the district court admitted involuntary statements; (3) the district court abused its discretion by denying his motion to

disqualify the presiding judge; and (4) the district court committed plain error by failing to suppress evidence that violated his right to confrontation. We affirm.

## FACTS

In May 2011, police arranged a controlled-buy between an informant and appellant Terry Lee West. Police equipped the informant with video and audio recording devices. Police followed the informant to West's property and watched as the informant turned into West's driveway. After the buy, police followed the informant to a pre-determined location where the informant handed over 54.2 grams of marijuana. The video of the controlled-buy shows West reach into a bin and pull out a green substance that appears to be marijuana.

On June 1, 2011, police executed a search warrant for West's property. When police arrived, they had their guns drawn and ordered West out of his home. West was handcuffed and briefly questioned by multiple officers. Police told West that they already had enough information to charge him and that it was in his best interest to cooperate. They also told West that he might not be taken to jail if he cooperated. When asked about the controlled-buy, West initially denied giving marijuana to the informant, but then admitted that he "fronted" the informant two ounces of marijuana. West then reversed himself and denied giving the informant marijuana. When questioned further, West said he would not say anything without talking to his lawyer. At that point, officers stopped questioning West and placed him under arrest.

In a tin shed on West's property, police discovered several large marijuana plants. Police found smaller amounts of marijuana in West's home and in two semitrailers on

2

West's property. Police also found a large array of gardening supplies on West's property. And, outside of West's house, officers found what they believed to be marijuana stalks that had been cut at the base. In all, police seized over 5,000 grams of marijuana.

On June 13, 2011, after West had been formally charged with several controlled-substance offenses and while he was incarcerated at the county jail, an investigator served him with property receipts and forfeiture notices. Without prompting, West started talking to the investigator about his case. The investigator told West that he did not want to talk about the case because West was represented by a lawyer. The investigator also said that if West wished to talk, the investigator would set up a meeting with West's lawyer. Nevertheless, West continued to make admissions.

On June 30, 2011, the investigator visited West in jail again to serve him with another property receipt. The investigator surreptitiously recorded the conversation. When West started to talk about his case, the investigator again cautioned West not to make admissions and reminded West that he was represented by an attorney. West continued to talk and, without questioning, made several inculpatory statements.

After a trial on stipulated facts, West was convicted of three controlled-substance offenses. At a June 6, 2012 court trial to determine whether a firearm sentencing enhancement applied to these convictions, West testified regarding the controlled-buy, the evidence found during the search of his home, and his involvement in growing marijuana. Based on this testimony, West was charged with one count of perjury.

After his controlled-substance convictions were overturned by this court, *State v. West*, No. A13-0198 (Minn. App. Dec. 30, 2013), *review denied* (Minn. Mar. 18, 2014),

3

West moved to suppress his June 1, June 13, and June 30, 2011 statements as involuntary and obtained in violation of his *Miranda* rights. The district court determined that all of West's statements were admissible in his perjury case but suppressed the June 1 statement in the remanded controlled-substance case.

Prior to West's perjury trial, he made a motion to remove the presiding judge. The judge also presided over the June 6, 2012 sentencing trial, and West argued that because she had "personal knowledge" of the case, she should not preside over the perjury trial. The judge denied the motion, and the chief judge of the district subsequently denied a similar motion. The case proceeded to trial, and a jury found West guilty of perjury. This appeal followed.

## D E C I S I O N

### *Miranda*

West argues that he was subjected to custodial interrogation on June 1, June 13, and June 30, 2011, and was never advised of his *Miranda* rights. Accordingly, he contends that the district court erred by failing to suppress those statements. Under the Fifth Amendment to the United States Constitution, "an accused has the right to be free from compelled self-incrimination. As a safeguard for this right, the United States Supreme Court has held that statements made by a suspect during a 'custodial interrogation' are admissible only if the police provided a *Miranda* warning before the statements were made." *State v. Sterling*, 834 N.W.2d 162, 168 (Minn. 2013); *see* U.S. Const. amend. V; *Miranda v. Arizona*, 384 U.S. 436, 444-45, 86 S. Ct. 1602, 1612 (1966). "Thus, a *Miranda*

4

warning is required if a suspect is both in custody and subject to interrogation." *State v. Thompson*, 788 N.W.2d 485, 491 (Minn. 2010).

### June 1, 2011 statement

The district court determined that West's June 1, 2011 statement was the result of a custodial interrogation and that West was not given *Miranda* warnings. The state does not challenge this determination. Instead, the state argues that the June 1 statement was admissible because the exclusionary rule does not apply to a collateral prosecution. The district court determined that, while the statement was taken in violation of West's *Miranda* rights, *Miranda* does not apply to shield a defendant from prosecution for perjury. Therefore, although the statement was not admissible as substantive evidence in the underlying controlled-substance case, it was admissible at West's perjury trial. Whether the exclusionary rule requires suppression of evidence in a particular case is a question of law we review de novo. *State v. Maldonado-Arreaga*, 772 N.W.2d 74, 77 (Minn. App. 2009).

The primary purpose of the exclusionary rule is to deter police misconduct. *State v. Lindquist*, 869 N.W.2d 863, 871 (Minn. 2015). For this reason, when a *Miranda* warning is not given, statements made during a custodial interrogation are not admissible in the state's "direct case, or otherwise, as substantive evidence of guilt." *United States v. Havens*, 446 U.S. 620, 628, 100 S. Ct. 1912, 1917 (1980). But the United States Supreme Court has "carved out exceptions to the exclusionary rule . . . where the introduction of reliable and probative evidence would significantly further the truthseeking function of a criminal trial and the likelihood that admissibility of such evidence would encourage police

misconduct is but a 'speculative possibility.'" *James v. Illinois*, 493 U.S. 307, 311, 110 S. Ct. 648, 651 (1990) (quoting *Harris v. New York*, 401 U.S. 222, 225, 91 S. Ct. 643, 645-46 (1971)). Because there is only a "speculative possibility" of encouraging police misconduct, voluntary statements taken in violation of *Miranda* may be used to impeach a defendant's testimony. *Harris*, 401 U.S. at 225-26, 91 S. Ct. at 645-46; *State v. Tomassoni*, 778 N.W.2d 327, 333 (Minn. 2010). "The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Harris*, 401 U.S. at 226, 91 S. Ct. at 646.

Applying this concept, the Minnesota Supreme Court has indicated that the exclusionary rule does not prohibit the substantive use in a perjury trial of a statement taken in violation of the Fifth Amendment. *State v. Berge*, 288 N.W.2d 687, 688 (Minn. 1979). In *Berge*, the defendant's testimony on cross-examination contradicted his testimony on direct. *Id.* On redirect, he admitted that he lied during direct-examination. *Id.* The defendant was charged and convicted of perjury based on this inconsistent testimony. *Id.* On appeal, the defendant argued that the district court erred by allowing the state to introduce the redirect testimony against him because "he was not warned, before he made his admission, that he had a privilege against answering the question." *Id.* The supreme court questioned whether such a warning was required, but concluded, "we need not rule on this point because it appears that the so-called perjury exception which is that perjury is not an acceptable alternative to the Fifth Amendment privilege would justify use of the evidence in any event." *Id.*

6

The district court properly determined that the exclusionary rule did not prohibit the state from introducing West's June 1, 2011 statement in his perjury trial. West testified at the June 6, 2012 sentencing trial and was subject to cross-examination about the statement. As this evidence was properly used to impeach West during the June 6, 2012 sentencing trial, there is no reason to exclude it from West's subsequent perjury trial. The exclusionary rule's purpose of deterring police misconduct has been fulfilled because the district court prohibited the state from presenting the statement as substantive evidence in West's trial on the underlying controlled-substance offenses. There is little possibility that admitting the evidence in a subsequent prosecution for perjury that occurred over a year after the statement was taken would encourage police misconduct.

### *June 13 and June 30, 2011 statements*

West argues that his June 13 and June 30, 2011 statements were inadmissible because they were obtained during a custodial interrogation and he was not given *Miranda* warnings. The state argues that because West was not subjected to interrogation, his *Miranda* rights were not violated. We agree.

As stated above, *Miranda* warnings are only required where "a suspect is both in custody and subject to interrogation." *Thompson*, 788 N.W.2d at 491. "[S]pontaneous, volunteered statement[s] not made in response to interrogation" will not be suppressed as a result of an arrestee not being given a *Miranda* warning. *State v. Hale*, 453 N.W.2d 704, 707 (Minn. 1990) (quotation omitted). Interrogation is express questioning or "'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating

7

response from the suspect.'" *State v. Edrozo*, 578 N.W.2d 719, 724 (Minn. 1998) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 1689-90 (1980)). "Such police conduct, to trigger *Miranda*, must reflect a measure of compulsion above and beyond that inherent in custody itself." *Id.* (quotation omitted).

The district court determined that West was not interrogated. This court "independently appl[ies] the totality-of-the-circumstances test to the facts as found by the [district court]" to determine whether a defendant was interrogated. *State v. Jackson*, 351 N.W.2d 352, 355 (Minn. 1984).

The district court found that on both June 13 and June 30, the investigator met with West solely for the purpose of serving him with documents. Each time, West began to talk about his case without any questioning from the investigator, and each time, the investigator informed West that he was not there to talk about West's case and that if West wanted to talk about his case, the investigator would set up a meeting with West's attorney. Despite the investigator's warnings, West continued to make inculpatory statements without prompting from the investigator.

The investigator did not question West and did not engage in any words or actions that he should have known would elicit an incriminating response. In fact, the investigator explicitly told West not to make admissions. Despite this, West volunteered inculpatory information. West claims that he was interrogated on June 30 because the investigator recorded his statement, but surreptitious recording alone does not make a statement the product of interrogation. *Edrozo*, 578 N.W.2d at 724-26. Because West was not interrogated, there was no *Miranda* violation.

8

*Voluntariness*

West also argues that his statements on June 1, June 13, and June 30, 2011, were involuntary. The district court determined that on June 1, West "voluntarily answered the officer's questions until he refused to speak any more without his attorney." The district court did not make any explicit determination as to the voluntariness of the June 13 or June 30 statements, but denied West's motion to suppress those statements.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits the admission of an involuntary or coerced confession. *State v. Nelson*, 886 N.W.2d 505, 509 (Minn. 2016). Unlike statements taken in violation of *Miranda*, involuntary statements are not admissible for any purpose. *Mincey v. Arizona*, 437 U.S. 385, 401-02, 98 S. Ct. 2408, 2418 (1978); *State v. Slowinski*, 450 N.W.2d 107, 111 (Minn. 1990). The state has the burden to prove by a preponderance of the evidence that a statement was voluntary. *State v. Zabawa*, 787 N.W.2d 177, 182 (Minn. 2010). This court reviews the district court's determination that a statement was voluntary de novo and accepts the district court's findings of fact unless they are clearly erroneous. *Nelson*, 886 N.W.2d at 509.

A statement is involuntary if the defendant's "will was overborne at the time he confessed." *State v. Farnsworth*, 738 N.W.2d 364, 373 (Minn. 2007) (quotation omitted). "The test of voluntariness is whether the actions of the police, together with other circumstances surrounding the interrogation were so coercive, so manipulative, so overpowering that [the defendant] was deprived of his ability to make an unconstrained and wholly autonomous decision to speak as he did." *State v. Jones*, 566 N.W.2d 317, 326

9

(Minn. 1997) (quotation omitted). Factors such as "the defendant's age, maturity, intelligence, education, experience, and ability to comprehend," as well as "the nature of the interview, including its length, the lack of or adequacy of warnings, whether the defendant's physical needs were met or ignored, and whether the defendant was denied access to friends" are relevant to voluntariness. *Zabawa*, 787 N.W.2d at 182-83.

West's June 1 interrogation involved some coercive circumstances. The district court found that West was ordered out of his house by officers who had their guns drawn, he was not given *Miranda* warnings, he was handcuffed, he was questioned by multiple officers, he was told that the police already knew about his criminal conduct, and he was told that if he cooperated he might not be taken to jail. Nevertheless, West's will was not overborne. The interrogation lasted only a few minutes, and, while West initially made an incriminating statement, he quickly retracted it. He also repeatedly told the officers that he is "not a rat," told them to "[l]ock" him the "f--k up," and asked for a lawyer. This is not the behavior of someone who is unable to resist police questioning.

West's June 13 and June 30 statements also were not the result of West's will being overborne. "[S]ome coercive state action" is required to make a statement involuntary. *Nelson*, 886 N.W.2d at 509. The investigator did not question West about his case and specifically told West he did not want to talk about the case. West's statements were unprompted and not the result of any coercive action by police.

West's statements to police were voluntary. The district court did not err by admitting them in his perjury trial.

*Motion to disqualify presiding judge*

West next argues that the district court abused its discretion by failing to disqualify the district court judge from presiding over his perjury trial. West argues that because the judge presided over the sentencing trial where the perjury occurred, she had "personal knowledge" of the case that required disqualification.

"A judge must not preside at a trial or other proceeding if disqualified under the Code of Judicial Conduct." Minn. R. Crim. P. 26.03, subd. 14(3). A party may move to disqualify a judge for cause at any time during the proceeding. *State v. Finch*, 865 N.W.2d 696, 701 (Minn. 2015). The Code of Judicial Conduct requires a judge to disqualify herself from "any proceeding in which the judge's impartiality might reasonably be questioned, including" when "[t]he judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding." Minn. Code Jud. Conduct Rule 2.11(A)(1). A judge is disqualified from a case due to just the appearance of partiality if a reasonable observer, with complete knowledge of the facts and circumstances, would question the judge's neutrality. *Finch*, 865 N.W.2d at 703.

The requirement that a judge disqualify herself if she has personal knowledge of facts in dispute is "a narrow prohibition." *State v. Dorsey*, 701 N.W.2d 238, 247 (Minn. 2005). It applies only to "knowledge that arises out of a judge's private, individual connection to particular facts" and "does not include the vast realm of general knowledge that a judge acquires in her day-to-day life as a judge and citizen." *Id.* An opinion "formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do[es] not constitute a basis for a bias or partiality

11

motion unless [it] display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible." *State v. Burrell*, 743 N.W.2d 596, 603 (Minn. 2008) (quotation omitted). Accordingly, there is a presumption "that judges will set aside collateral knowledge and approach cases with a neutral and objective disposition." *Id.* (quotation omitted). To overcome this presumption, a party must show "evidence of favoritism or antagonism." *Id.*

The presiding judge and chief judge of the district denied West's motion to disqualify. They determined that because the presiding judge's knowledge of the case was acquired during a prior judicial proceeding and because West failed to show any "favoritism or antagonism," disqualification was not required. This court reviews the denial of a motion to remove a judge for cause for an abuse of discretion. *Hooper v. State*, 838 N.W.2d 775, 790 (Minn. 2013).

The only "personal knowledge" West claims the judge had was acquired at a prior judicial proceeding, the June 6, 2012 sentencing trial. Moreover, a transcript of West's testimony at that sentencing trial was admitted as an exhibit at his perjury trial. Accordingly, the jury had essentially the same knowledge of West's perjured testimony as the judge. The only other evidence of bias cited by West is adverse rulings. But the judge has also made rulings in West's favor, and "[p]revious adverse rulings by themselves do not demonstrate judicial bias." *Hannon v. State*, 752 N.W.2d 518, 522 (Minn. 2008). Because the judge's knowledge of the perjured testimony was acquired during a prior judicial proceeding, there is a presumption that she was able to set it aside and act

12

impartially.  West has failed to overcome that presumption by presenting evidence of favoritism or antagonism.

West cites our decision in *State v. Cleary* to support his argument that the judge's prior knowledge and participation in prior proceedings requires disqualification.  882 N.W.2d 899 (Minn. App. 2016).  In that case, the same judge who terminated a probationer from drug court revoked his probation for the sole reason that he had been terminated from drug court.  *Id.* at 903.  We determined that by presiding over both the drug court and probation revocation proceedings, the district court violated the probationer's due process rights.  *Id.* at 908.  But, *Cleary* hinged on the differences between drug court and ordinary criminal court.  We stated that "the relationship between a drug court judge and drug court probationer is more personal than the traditional relationship between a judge and a criminal defendant appearing before that judge."  *Id.* at 905.  For that reason, we felt it necessary to disregard the standard presumption that judges can set aside knowledge gained during prior judicial proceedings.  *Id.*  Unlike Cleary, West was not a drug court probationer.  Moreover, in *Cleary*, the district court judge actually made the decision to revoke probation.  Here, the jury, not the judge, was the sole arbiter of West's guilt or innocence.

The presiding judge's prior knowledge of the case was acquired during a previous judicial proceeding, and West has not presented any evidence of favoritism or antagonism.

Accordingly, the district court did not abuse its discretion by denying West's motion to remove the presiding judge.[1]

*Confrontation Clause*

West maintains that his Confrontation Clause rights were violated when the video and audio of the controlled-buy were admitted into evidence without the informant's testimony. At trial, West claimed that the informant's testimony was necessary to establish foundation, but did not object based on his right to confrontation. Because West failed to preserve the confrontation issue for appeal by objecting on that ground, we review only for plain error. *See State v. Tscheu*, 758 N.W.2d 849, 863 (Minn. 2008) (stating that plain-error analysis applies to alleged confrontation error not objected to in district court).

To establish plain error, West must show that there was an error; that the error was plain; and that the error affected his substantial rights. *State v. Kelley*, 855 N.W.2d 269, 273-74 (Minn. 2014). If West establishes these three prongs, we assess whether we must address the error to ensure the fairness and integrity of the proceedings. *Id.* at 274.

The Confrontation Clause provides a criminal defendant with the right "to be confronted with the witnesses against him." U.S. Const. amend. VI; *see also* Minn. Const.

---

[1] Days before trial, West subpoenaed the presiding judge to testify at his perjury trial. A different district court judge quashed the subpoena. In his brief, West lists this as an issue. West, however, makes no legal arguments and presents no legal authority on this matter. Moreover, the district court ruled on the state's motion from the bench. West has failed to provide a transcript containing the district court's ruling. "An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection." *State v. Andersen*, 871 N.W.2d 910, 915 (Minn. 2015) (quotation omitted). Also, this court may decline to review an issue when the appellant has failed to provide an adequate record to allow review. *State v. Barnes*, 713 N.W.2d 325, 337 (Minn. 2006). On the record presented, we see no obvious prejudicial error.

art. I, § 6; *State v. Hull*, 788 N.W.2d 91, 100 (Minn. 2010) (stating that analysis of a Confrontation-Clause claim is the same under either the federal or Minnesota constitution). The Confrontation Clause prohibits the admission of testimonial out-of-court statements unless the declarant is unavailable to testify and the defendant had a previous opportunity to cross-examine the declarant. *Andersen v. State*, 830 N.W.2d 1, 9 (Minn. 2013) (citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004)). "A successful Confrontation Clause claim has three prerequisites: the statement in question was testimonial, the statement was admitted for the truth of the matter asserted, and the defendant was unable to cross-examine the declarant." *Id.*

West argues that the entire video/audio of the controlled-buy is testimonial and was admitted to prove the truth of the matter asserted. He claims that the "defense was deprived of its right to cross examine the informant" about the controlled-buy. But the confrontation clause is only concerned with the statements of witnesses. *See Id.*; *State v. Ziegler*, 855 N.W.2d 551, 552 (Minn. App. 2014) (concluding that "[m]achine-generated data that do not contain the statements of human witnesses are not testimonial statements that implicate a defendant's right to confrontation"). "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Minn. R. Evid. 801(a). Accordingly, the Confrontation Clause does not apply to the entire video/audio recordings of the controlled-buy, it only applies to verbal or non-verbal communicative statements made by witnesses on those recordings.

West made several statements during the controlled-buy. Those statements, however, do not implicate the Confrontation Clause. The purpose of the Confrontation

15

Clause is to ensure the right to cross-examine witnesses, and a defendant cannot cross-examine himself. *State v. Goodridge*, 352 N.W.2d 384, 388 n.2 (Minn. 1984). Moreover, as party admissions, West's statements are not hearsay. Minn. R. Evid. 801(d)(2)(A); *State v. Vang*, 774 N.W.2d 566, 578 n.6 (Minn. 2009).

The informant also made statements on the video/audio recordings of the controlled-buy. The state contends that the informant's statements were not admitted to prove the truth of the matter asserted, but were admitted as context for West's statements. We agree. The informant's statements consisted almost exclusively of questions and responses to West. The informant made no statements that independently implicated West in criminal activity. Because the informant's statements were only admitted to give context to West's statements, they were not offered to prove the truth of the matter asserted and do not implicate the Confrontation Clause. *See State v. Tovar*, 605 N.W.2d 717, 726 (Minn. 2000) (concluding that statements of police in interview of defendant were only offered as context for defendant's statements and therefore did not implicate the Confrontation Clause).

Admission of the video/audio of the controlled-buy did not violate West's rights under the Confrontation Clause. Because West cannot establish error, the first prong of the plain-error test, we need not address the remaining prongs of that test.[2]

**Affirmed.**

---

[2] West also argues that the district court erred by denying his motion for a directed verdict of acquittal because his conviction "was necessarily based upon illegal evidence." He cites his custodial statements and the video/audio controlled-buy recordings as the illegal evidence that led to his conviction. Because this evidence was properly admitted, we do not address his claim.